### HARN et al. v. STATE ex rel. WILLIAMSON, Atty. Gen.

No. 27848. Jan. 24, 1939.

Rehearing Denied Feb. 14, 1939.

The parties are hereinafter referred to as they appeared at the trial, or by individual designation.

In 1920, the state, pursuant to a special act of the Legislature, chapter 298, S. L. 1919, commenced a condemnation proceeding against defendant Harn seeking, as stated in the petition filed therein, "to appropriate the tract of land hereinabove described for its use for State Capitol building purposes." Thereafter the commissioners, duly appointed to consider the injury suffered by Harn by reason of such appropriation, filed their return and report assessing damages in the sum of $80,375. This sum was paid into the office of the court clerk, and soon thereafter was delivered by the clerk to Mr. Harn, . and no further proceedings were had in said matter until some 16 years later, April 30, 1936, when the state procured an order in the cause approving the report of the commissioners above mentioned.

In the meantime Harn had executed to defendant Jones an oil and gas mining lease upon the premises in question, and thereafter the state commenced this action.

Plaintiff in the instant case bases its action upon the theory that the condemnation proceedings aforesaid passed to it an absolute estate in fee-simple in the land, whereas, the defendants allege that the state became vested only with an easement entitling it to the use of so much of the land as was necessary for the purposes designated in the statute, and no more, and that the defendant Harn was not thereby divested of the fee, including the oil and gas rights in and under the premises.

The trial court rendered its decree canceling Jones' oil and gas lease and quieting title in the plaintiff as against the defendants, and this appeal resulted.

Defendants assert that the trial court's judgment was erroneous in that the statute does not authorize condemnation of the fee, nor does the proceeding purport to so condemn.

The right of eminent domain is a fundamental attribute of the sovereign state, and may be exercised without express constitutional sanction. But the power to exercise such right lies dormant in the state until the Legislature by specific enactment designates the occasions, the modes, and the agencies by and through which it may be placed in operation, 20 C. J. 513, sec. 2. Statutory authorization is a prerequisite to condemnation proceedings, and generally such proceedings do not transfer the fee-simple estate in the absence of express provision to that effect in the statute, but will only pass

Keaton, Wells & Johnston, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., Randell S. Cobb, Asst. Atty. Gen., Houston E. Hill, and Edward Howell, for defendant in error.

GIBSON, J. This action was instituted in the district court of Oklahoma county by defendant in error, the State of Oklahoma on relation of the Attorney General, against plaintiffs in error, Harn and Jones, to quiet title to a tract of land lying immediately south and west of the State Capitol square.

the right to use and occupy the premises for the purposes for which it was condemned. Carter v. Davis, 141 Okla. 172, 284 P. 3. There we stated the rule as follows:

"As a general rule the appropriation of land under power of eminent domain does not give a fee-simple title in the absence of a statute to that effect, but only a right to use and occupy the land for the purpose for which it was taken."

Where private property is taken by eminent domain, it is to be presumed that merely an easement, or, as some have said, a qualified or terminable fee, and not a fee-simple estate, was acquired in the land, with reverter to the owner upon abandonment of the public use. Carter v. Davis, supra. And when the estate or interest to be taken is not definitely set forth in the statute, only such estate or interest may be taken as is necessary to answer the purpose in view. 20 C. J. 1222, 1223. And this rule applies both to the property and the extent of the interest or estate therein to be acquired by the public. 10 R. C. L. 88; 79 A. L. R. 515. Subsequent to such acquisition, the determination of character and extent of the use, and the estate taken, is wholly a judicial function. Section 24, art. 2, Const.

Whether or not the condemnation proceedings in the instant case passed to the state more than an easement or a terminable fee, depends primarily upon the ultimate purpose to be accomplished or occasion to be met by the legislative agencies under the authority of the act aforesaid. This is true in every condemnation case of this character.

The state relies to considerable degree upon our decision in Ramsey v. Leeper, 168 Okla. 43, 31 P.2d 852. There the court had under consideration certain condemnation proceedings whereby the city of Oklahoma City had appropriated certain land for waterworks purposes under authority delegated by section 4507, C. O. S. 1921 (amend. ch. 11, S. L. 1929, sec. 6350, O. S. 1931), 11 Okla. Stat. Ann. sec. 563. The proceedings were sustained as passing to the city the fee-simple title. The report of the commissioners was there submitted to the district court for its approval or rejection, and the judgment rendered thereupon purported to pass a fee-simple title to the city. This judgment was attacked in a collateral proceeding seeking reverter of a portion of the land for nonuser. The statute, section 4507, though not specifically authorizing condemnation of the fee, was held sufficiently broad in its language to support the court's judgment as an adjudication that the fee-simple title passed to the condemnor. In other words, the judgment was supported by the pleadings, which included the statute upon which the petition was predicated.

Whether the condemnor be the state or a municipality, there is but one method of procedure prescribed for the condemnation of land in cases of this character, and that procedure is the same as the procedure provided by law for condemnation of land for railroad purposes (see sections 6059, 6060, 6403, 6408, 10051, O. S. 1931, 11 Okla. Stat. Ann. secs. 305, 292, 665, 670; 27 Okla. Stat. Ann. sec. 5; sec. 11935, O. S. 1931, 66 Okla. Stat. Ann. sec. 57). The act here under consideration, chapter 298, S. L. 1919, also directs that the proceedings be conducted in the manner provided by law for the condemnation by railway companies of lands necessary to their use. That procedure is defined in sections 11931-11933, O. S. 1931, 66 Okla. Stat. Ann. secs. 53-55. Under the latter sections no further proceedings are necessary beyond the report of the commissioners and payment of the condemnation money as therein fixed, unless a party file his exceptions to the report or demand a jury trial within a given time. The report, if allowed to stand without objection, serves to pass the use or title condemned. Though the report is not the pronouncement of a judicial body or tribunal, it has the force and effect of a judgment in such case under the statute. 20 C. J. 1041, 1042, sec. 428.

In the instant case the state in due time requested a jury, and the defendant Harn filed his exceptions to the report, but these matters were later definitely waived by the parties. The result was to allow the condemnation proceedings to stand unchallenged and to become, along with the statute, full and complete indicia of the condemnor's title thereby acquired.

Had either party filed exceptions to the commissioners' report as provided by section 11933, supra, and had not waived same, the district court could have reviewed the report and thereupon rendered its order of confirmation or rejection, or ordered a new appraisement. But, as we have indicated above, in the absence of written exceptions or request for jury, the report must stand as a final determination of every question involved, except the question of the character of the use or the extent of the estate condemned. The latter is a judicial matter to be determined by the courts in cases of the character here on review. Section 24, art. 2, Const. We do not mean to leave the impression that the district court on review after exceptions filed may not determine the extent of the use or quantity of estate passing to the condemnor (see Ramsey v. Leeper, supra). But it is well to add here that wheth-

er the condemnation proceedings be instituted by a railroad under sections 11931-11933, supra, or by the state under chapter 298, S. L. 1919, the procedure to be followed and the power of the court are precisely the same. A distinction is found only in the result; the railroad may take no more than an easement (sec. 24, art. 2, Const.), while the state, if in fact it has so elected, may take the fee by virtue of its inherent powers.

In deciding the question here presented, the extent of the estate condemned, we must look to the act authorizing the condemnation (ch. 298, S. L. 1919), and to the proceedings instituted pursuant thereto, including the commissioners' report aforesaid. If, from that inspection, it appears that the Legislature by its enactment intended to appropriate the fee-simple title, and that such title was reasonably requisite to the designated use, and suitable proceedings were prosecuted to that end, we must hold that the fee-simple title passed to the city.

The title to the statute in question reads as follows:

"An Act authorizing the State Board of Public Affairs to accept title to and purchase or condemn land; and making an appropriation for the purpose of improving such land so purchased or condemned, and for the paving of Lincoln boulevard; and declaring an emergency."

The act appropriates a certain sum for the purpose "of acquiring additional land adjacent to or in the vicinity of the State Capitol Building and grounds and of beautifying such land, and of beautifying * * * Lincoln boulevard, etc.," and continues as follows:

"* * * When tentative plans shall have been made, said board shall seek to acquire by purchase from the owner or owners thereof, not to exceed approximately forty (40) acres of land adjacent to and in the vicinity of the Capitol building and grounds comprehended in such plans, and, if able to agree upon a reasonable purchase price therefor, or upon an exchange therefor or for any part thereof, as hereinafter provided, such lands, or any part thereof, may, with the approval of the Governor be purchased or acquired by exchange; and, if purchased, the purchase price shall be paid from the sum herein appropriated. If, however, said board be unable to agree with the owner or owners upon the purchase price thereof, then the Attorney General shall, upon the request of the Governor, institute proceedings in condemnation to acquire such land or part thereof, such proceedings to be conducted in the name and on behalf of the state in the manner provided by law for the condemnation by railway companies of lands necessary to their use; and the condemnation moneys required in such proceedings shall be paid from the sum herein appropriated; upon the making

of the award or upon final judgment, as provided by such laws, and at the times therein provided. When such lands shall have been so acquired, or when, under such proceedings, the right to enter upon such lands shall exist, said board shall proceed, from any moneys remaining in the improvement fund in this Act provided or from such portions of such fund as may be necessary for the purpose, to pave such boulevard and beautify and otherwise generally improve such land and such boulevard in accordance with such plans. * * *"

The act also authorizes the "purchase" of the land, and limits the price per acre to $3,000 in event of purchase, but fixes no limit as to price in event condemnation proceedings must be resorted to upon inability to purchase.

The petition filed by the state in the condemnation case asserts that it is necessary for petitioner "to appropriate the tract of land * * * for its use for State Capitol building purposes." The petition also asks that proper parties be appointed to inspect "such real estate" and consider the value thereof, and that the state thereupon be authorized "to enter upon and take such real property for its own use" upon payment of the condemnation money.

The notice to defendant Harn stated that it was necessary for the state "to appropriate for its use for State Capitol building purpose" the land described.

The order appointing commissioners recited that the state was condemning the land described "for State Capitol and building purposes," and they were commanded to inspect the real property and consider the injury to be sustained by the owner "by said appropriation of his land."

The report of the commissioners reads, in part, as follows:

"Comes the undersigned commissioners heretofore appointed by the court to inspect the real property hereinafter described and consider the injury which the said defendant W. F. Harn, as the owner in fee and in reversion thereof, has sustained and may sustain by reason of the taking of said property for State Capitol building and improvement purposes by the state of Oklahoma, and respectfully submit the following report. * * *

"We further report that the state of Oklahoma, the plaintiff in the above-entitled cause, has located its Capitol building adjacent to and near the property hereinbefore described and that the whole of said property above described is necessary for the purposes aforesaid, and that the whole of said property must be taken by the said plaintiff for said purpose.

"We further report that we have considered the injury which the defendant as the

owner in fee and in reversion of the property hereinbefore described, has sustained and may sustain by the taking of said property by the said state of Oklahoma, and we do hereby assess the damages of said owner by reason of such appropriation of the hereinbefore described land at the total sum of Eighty Thousand Three Hundred Seventy-five ($80,375.00) Dollars."

The act clearly reveals an intent to purchase, or in the alternative to condemn, the land for the general purpose of enlarging the Capitol site. Whether the ultimate acquisition should be the result of purchase or condemnation, the quantity of estate to be acquired in either event was intended to be the same. That the estate sought was intended by the Legislature to be a permanent acquisition is hardly subject to doubt.

"There are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take the lands in fee." City of Newton v. Perry, 163 Mass. 319, 39 N. E. 1032.

See, also, Carroll v. Newark, 108 N. J. L. 323, 158 Atl. 458, 79 A. L. R. 509.

A command to purchase or to acquire land constitutes a mandate to take full and complete title unless the command contain qualifying provisions to indicate otherwise. The word "land," without indicative limitation, is all inclusive and embraces every estate or use therein capable of segregation and ownership. This definition applies to the term "land" when used in reference to the right of eminent domain. 20 C. J. 589, sec. 76.

But, though the legislative mandate may be to acquire all the estate, the designated use to which the land is to be appropriated may constitute sufficient indication of an intention to take less than the fee-simple title. If the proposed public use will, within reason, require less than the fee, then the estate passing in condemnation should be limited to that degree which would be no more than fully commensurate with the designated use. This is merely in keeping with the principles to be observed in connection with the appropriation of private property under the power of eminent domain, a few of which we have pointed out above.

The act in question may well be summed up as a legislative delegation of authority to acquire the land by purchase or condemnation in furtherance of a plan to enlarge the Capitol site, with the additional command to landscape the same in a manner suitable to the purpose.

Above, we have said that a command to take the land was a command to take the fee-simple estate. Clearly, nothing short of a fee estate would be commensurate with the stated purpose in the instant case. It should be presumed that the Legislature would require the fee-simple title to land upon which to locate a Capitol site.

The condemnation proceedings were conducted in strict conformity with the purposes and intent of the statute, resulting in the acquisition of a fee-simple title in the lands on behalf of the state.

In view of what we have said above, it becomes unnecessary for us to consider the contention of the state that the order upon confirmation served to pass a fee-simple title.

The judgment is affirmed.

BAYLESS, C. J., and OSBORN, CORN, HURST, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., and RILEY, J., absent.