FISCHER et ux. v. OKLAHOMA CITY et al.

No. 32377. Sept. 24, 1946.

Rehearing Denied. Nov. 26, 1946.

*174 P. 2d 244.*

A. E. Pearson and V. E. Stinchcomb, both of Oklahoma City, for plaintiff in error.

A. L. Jeffrey, Municipal Counselor,

and Arthur Leach, Asst. Municipal Counselor, both of Oklahoma City, for defendants in error.

BAYLESS, J. This appeal from the district court of Oklahoma county by O. H. Fischer et ux. questions the correctness of the judgment of that court in favor of the City of Oklahoma City, a municipal corporation, et al. Fischers brought the action to recover certain real estate, which City had earlier taken from them by the exercise of the power of eminent domain.

Fischers first contend that city had no power under Oklahoma law to condemn a fee-simple title to this property. At the outset they are familiar with our decisions in Ramsey v. Leeper, 168 Okla. 43, 31 P. 2d 852, and Harn v. State, 184 Okla. 306, 87 P. 2d 127, holding generally that a fee-simple title can be taken by condemnation by a city and by the state. Not only do they attack the soundness of these decisions, they also assert that this situation is more closely analogous to that in Carter v. Davis, 141 Okla. 172, 284 P. 3. Upon consideration of the general attack by Fischers on the Ramsey and Harn decisions, we are of the opinion that there is no reason for criticizing or departing from the rule announced therein. Nor do we think the Carter v. Davis decision applicable to this record. We think it is clear from this record that City in its proceedings was explicitly definite in its purpose to acquire a fee-simple title. In the Carter v. Davis Case no such definite purpose was found; nevertheless, it was recognized that a purpose to condemn a fee-simple title would be based on legal precedent and upheld on proper proceeding. The argument under this proposition, and elsewhere in Fischers' briefs, that this property was acquired by a subterfuge and misrepresentation because it assertedly was acquired for public park purposes when the true primary purpose for acquiring it was for aviation purposes, is without merit. The acquisition of this property by the City by condemnation for either public park or aviation purposes or both

together is fully justified by our Constitution and statutes as is demonstrated by our decisions in Ruth v. Oklahoma City, 143 Okla. 62, 287 P. 406, and Schmoldt v. Oklahoma City, 144 Okla. 208, 291 P. 119. While the stamp of approval could not be placed on a stated purpose to acquire for one purpose when all circumstances pointed to an intention to use for the other exclusively, simply out of consideration for orderly procedure, nevertheless, the court will not undertake to weigh to approve or disapprove the division of use that is made when it is made plain, as it is in this case, that both purposes were to be served. Our reference to orderly procedure involves the thought that since either purpose is legitimate, it would offend to openly pursue one purpose while secretly intending to pursue the other.

City argues at length concerning the effect of the conduct of the parties during the condemnation proceedings, saying that the grounds of attack now being urged by Fischers actually should have been used by Fischers in that proceeding as objections to the necessity for taking and to question the nature of the estate needed by City but were not so used, thereby bringing into operation the rule of res adjudicata; and that Fischers are estopped to question now the title of City and the use it makes of the land since they proved to the best of their ability the fee-simple value of the land taken as of the time of the taking, that they took City's money and still retain it, and sat idly by while City improved this property and altered its position in all respects.

The better rule seems to be to regard the transfer of title that takes place under eminent domain as being a sale, even though in a sense forced. The initiation and prosecution of the proceedings by the condemnor forces the owner into the matter. The owner may not contest the grant by the Legislature to the condemnor of the power of eminent domain, but he may contest the fact of the necessity of the taking, City of Tulsa v. Williams, 100 Okla. 116, 227

P. 876, and the nature of the estate to be taken, 30 C.J.S. 195 et seq. If the owner does not contest the need for taking his land and does not question the estate taken, at least it is reasonable to assume that he waives the objections, 29 C.J.S. 1189, note 49, and cases. If, in addition to making no contest in these respects, he actively participates in proving the value of the fee estate being taken from him, the record becomes stronger in favor of his acquiescence. The hearing was had March 18, 1942, and it was stipulated that the jury selected "Should determine: the value of the fee-simple title" to the land involved. This action was filed March 15, 1945.

Need for taking the particular land and the estate therein to be taken, like the issue of compensation for the taking, is judged by the conditions existing at the time of the taking. Where limited estate is taken, there remains in abeyance, always ready to be asserted and protected, the reversionary interest. These give rise to the only instances known to us when subsequent events or conditions may be interposed. Abandonment deliberately, or by nonuser or by misuser, is well recognized, 30 C.J.S. 216, sec. 455 et seq. A study of the cases cited in the footnotes of the foregoing citation reveals that they all relate to the loss of the right to limited estates only. It is to be noted that in section 460, above, it is pointed out that where condemnation has vested a fee in condemnor, there is no reversion as occurs in the instances of limited estates.

This is logical. The condemnation of a fee estate, without objection from the owner, vests the same type of fee estate, insofar as the owner is concerned, that a voluntary grant would convey. Conceding the grant of power to the state and its municipal subdivisions to condemn a fee estate in land, we know of no case, and are not cited any, wherein the owner has been permitted later to attack and modify a title taken from him by condemnation on the basis of subsequent events. The binding effect of the judgment in the earlier proceedings and Fischers' waiver in that trial of their permissible objections support City's contentions that res adjudicata and estoppel apply.

It is also argued by Fischers that the taking of this property by City for airport purposes makes City a public service corporation or public utility or transportation company within the meaning of section 6, art. 18, Constitution of Oklahoma, and its corollary sections and aiding statutes; and, by reason of this, the title which the City, as such public utility exercising the power of eminent domain, can take is limited similar to a railroad right of way, section 24, art. 2, Constitution of Oklahoma. Section 24, supra, reads in part as follows:

"The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it was taken."

Fischers offer no convincing analogy between a railroad right of way and an airport. To us, the airport presents a close analogy to a railroad station and surrounding yards and facilities. It is proper to observe that there is no constitutional limitation on the title to be acquired by a railroad for its purposes other than right of way. In addition, the weight of authority, including our opinion in Travis v. Dickey, 96 Okla. 256, 222 P. 527, is that the furnishing of services and facilities to further a transportation of goods and passengers without actually transporting the goods and passengers and making a charge for such transporting does not make the furnisher of such services a public carrier. 9 Am. Jur. 446, and 13 C.J.S. 25, et seq., and cases cited in footnotes.

The next argument that the purpose of the acquisition of this property under the record shown violates section 17, art. 10, Constitution of Oklahoma, is answered in the negative by our opinions in the Ruth and Schmoldt Cases, supra, and by Delfeld v. City of Tulsa, 191 Okla. 541, 131 P. 2d 754, 143 A.L.R. 1032.

It is argued that Oklahoma City has no power to acquire property for park purposes, but such power rests in the park board of said city. Whether this is true or not is of no concern to Fischers. They have been paid for this land by Oklahoma City and if the title should rest in the park board, one of its agencies, instead of the city itself, those corporate entities and the citizens of the municipality only can raise the issue. But this would be for the purpose of adjusting title as between the municipal bodies and not for the purpose of destroying their title and revesting it in Fischers.

The judgment is affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN and DAVISON, JJ., concur. WELCH, J., concurs in conclusion. RILEY, J., dissents.

————

RILEY, J. (dissenting). Herein the City sought, by the exercise of the powers of eminent domain, to acquire the fee-simple title to land. The issue presented is whether such a title was acquired. If so, the City was within its right to subsequently convey the land and the City's grantee or lessee had right to exploit the land's natural resources and petroleum. Otherwise, such grant and exploitation constituted an invasion of original owner's rights in land.

I cannot follow the majority view that the owner of land condemned "may not contest the grant (of the power of eminent domain) by the Legislature to the condemnor" but can follow the statement of the majority that such an owner of land may contest "the nature of the estate taken, 30 C.J.S. 195 et seq". These rules seem to me inconsistent.

In Ramsey v. Leeper, 168 Okla. 43, 31 P. 2d 852, much consideration was given to the landowner's contest of the legislative grant of the power to the city.

The fact that the value of a fee-simple title to land condemned by exercise of the power is proved has little, if anything, to do with the extent of the title taken or the grant of the power to take, for when land is condemned for public use, a perpetual use is contemplated. The respective values of a perpetual use of land and a fee-simple title to land vary little, if any. The variation, if any, does not establish the law applicable nor the extent of the title taken. Heyward v. Mayor, cited in Brooklyn Park Com'rs v. Armstrong, 45 N.Y. 234, 6 Am. Rep. 7.

"The possibility that the land may at some future time revert . . . by the cessation of the public use is too remote and contingent to be considered."

The individual's rights in lands are to be liberally construed. The condemnor's power is subject to strict construction. The individual's property rights may not be properly divested by estoppel. Equity abides with him even to the extent of strict construction of the law governing the powers of eminent domain.

The foundation of the majority opinion is the landowner's failure in the proceedings to object. The law made that objection for him. However, the landowner continually objected; he was in no wise satisfied; otherwise, he would have sold and conveyed the land. I cannot agree that "condemnation of the fee estate without objection from the owner, vests . . . fee estate . . . that a voluntary grant would convey". The maximum title, fee simple absolute, may be voluntarily granted by the owner of land, but the mere fact that a municipality seeks to condemn for public use the fee-simple estate in land does not vest it with authority to do so. The issue is one of the extent of title authorized by the legislative delegation of power to the City. If the statute authorized the City to acquire by condemnation merely the use of land, a fee-simple title was not by the City acquired.

Ordinarily, when the public use of

land so acquired ceases, the lands revert to the original owner. "It is the interest which the City acquires by condemnation proceeding which vests" and nothing more. Skelly Oil Co. v. Kelly, 134 Kan. 176, 5 P. 2d 823; State v. Lowry, 166 Ind. 372 77 N.E. 728, 4 L.R.A. (N.S.) 528.

Plaintiffs in error are entitled to all rights in the land not taken by the City for public purposes. It cannot be logically said that the statute vested in the City the power to acquire for park purposes, by condemnation, the fee-simple estate in the land nor more than the perpetual public use thereof for that purpose. Ramsey v. Leeper, 168 Okla. 43, 31 P. 2d 852, should be overruled. An equal number of the present Justices dissented to that erroneous rule of law.