**KELLY et al.**

v.

**OKLAHOMA TURNPIKE AUTHORITY.**

No. 35772.

Supreme Court of Oklahoma.

April 13, 1954.

Loeffler & Loeffler, Bristow, for plaintiffs in error.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for defendant in error.

CORN, Justice.

Plaintiff brought three separate condemnation suits seeking to condemn two 17-acre tracts of defendants' property, and to acquire a temporary easement to an additional 1.84 acres. The land sought to be condemned was approximately in the middle of a ranch operated by defendant Kelly Brothers, and consisted both of leased land and land owned in fee.

The trial court appointed condemnation commissioners who returned their report awarding defendants damages for condemnation of the three tracts in the total sum of $53,870. December 19, 1951, plaintiff deposited the exact amount of the awards with the court clerk and thereafter took possession of the property. On December 22, 1951, plaintiff filed demand for jury trial and defendants then secured disbursement orders for the condemnation money, and upon such orders the court clerk paid over the condemnation money, less 1% poundage fee. Subsequently defendants filed motion to retax the costs and, following a hearing on February 18, 1952, the plaintiff, on March 3, 1952, deposited a sum ($498.53) equal to the poundage fee on the amount of damages ($49,853) awarded in one case.

March 25, 1952, defendants filed motions to strike plaintiff's demand for jury trial, and to strike the cases from trial assignment, upon the ground plaintiff had waived any right to jury trial by failing to deposit the poundage fee within the time allowed for making demand for jury trial. The motion to strike plaintiff's demand was overruled on April 3, 1952, and the same day plaintiff deposited the amount of poundage fee in the other two cases.

The case was heard April 24, 1952, at which time defendants renewed their motion to strike the demand for jury trial, and also sought judgment on the pleadings. The motions were overruled and by stipulation the three cases were tried as one case, and are so presented on appeal. The jury returned a verdict fixing the amount of defendants' damages at $5,000. The trial court then entered judgment for plaintiffs for $48,870, the amount of the difference between the commissioners' award and the damages allowed by the jury.

May 26, 1952, a hearing was had on the Journal Entry drafted by plaintiff. Defendants objected to that portion of the judgment charging them with the 1% poundage fee as costs, and also the charging of interest against defendants from the time the condemnation money was drawn down until the date of judgment. Defendants were overruled on both grounds and judgment was rendered for plaintiff in sum of $48,870 with interest from December 31, 1951, until paid, together with all costs accrued or accruing subsequent to the date of first appraisal.

The various assignments of error relied upon for reversal of this judgment are presented under five main propositions. These propositions provide the basis for a dissertative treatment of various matters concerning the condemnation proceedings considered herein but do not, in our opinion, present questions which are necessary to a proper determination of this appeal. For such reason we deem it unnecessary to deal with certain of these propositions at any greater length than hereafter noted.

The first two propositions are founded upon plaintiff's failure to pay into the registry of the court, following the commissioners' assessment of compensation for the taking of the particular property, an amount equal to such award plus the poundage fee. The argument is that plaintiff's failure to discharge such obligation before entering upon the property constituted a violation of defendants' constitutional right and: (a) made the commissioners' award a final judgment; (b) invalidated plaintiff's right to prosecute any

further proceedings relative to such condemnation, so that it was error for the trial court to overrule defendants' motion to strike plaintiff's demand for jury trial following the commissioners' assessment of compensation due for taking of the property.

The circumstances reflected by this record reveal that, at best, such argument presents only academic legal questions. It is true that the Constitution, Art. 2, Sec. 24, requires the condemnor to pay the amount of compensation for the taking, as fixed by the commissioners, either to the land owner, or into court. Plaintiff did deposit the amount of the commissioners' award; and the money was disbursed to defendants upon their application. No question was raised relative to the alleged insufficiency of the amount deposited until after the awards had been disbursed and plaintiff had entered upon the property. Under such circumstances the condemnation had become an accomplished fact. Admitting that plaintiff failed to proceed properly, and that such failure was violative of defendants' rights under practices which are not subject to approval, the fact remains that the matter had progressed sufficiently so that no substantial question remained for consideration other than to finally determine the amount due defendants as compensation for the property condemned.

Neither are we impressed by the argument that an asserted violation of defendants' constitutional rights destroyed plaintiff's right to prosecute further proceedings for determination of the sufficiency of the condemnation award. We are cited to no rule of law based upon the premise that a course of conduct which might even be considered reprehensible, serves to preclude assertion of a right to have a claim adjudicated to finality. That this is true must be recognized in view of the frequently applied rule of reverse condemnation. This, in substance, was the principle applied in Blackwell, E. & S. W. Ry. Co. v. Bebout, 19 Okl. 63, 91 P. 877–880, wherein the following language was used:

"If the Blackwell, Enid & Southwestern Railway Company went upon the land of Bebout and attempted to appropriate any portion of it for railway purposes, he had the right to require them to stop work until the damages could be ascertained and deposited with the clerk of the court. If he failed to require this to be done, and stood by until the work was completed, he gained no greater rights than he had before, and the railway company got no better rights by his silence. The failure to have the damages determined in advance did not change the rights or relations of the parties. The provisions of the statute were still adequate for the determination of the rights of both parties and for the enforcement of such rights when determined."

Defendants' fifth contention presents matters of such substance as to require attention at this point. The first subdivision of this proposition squarely presents for consideration the question whether the statutory 1% poundage fee charged by the court clerk, 12 O.S.1951 § 921, 28 O.S. 1951 Sec. 31 upon defendants' withdrawal of the commissioners' award constitutes a part of the costs of the first assessment required to be paid by the condemnor under 66 O.S.1951 § 56.

Our closest approach to consideration of this question may be observed in Grand River Dam Authority v. Grand-Hydro, 188 Okl. 506, 111 P.2d 488. In that case Grand River Dam Authority sought mandamus to compel a court clerk to accept the amount of commissioners' awards in certain condemnation proceedings without payment of an additional amount as costs, wherein was included the clerk's poundage fee. Although we affirmed the judgment denying the writ and requiring the condemnor to pay the costs, which sum included the poundage fee, certain language used in the body of the opinion and not necessary to disposition of the case now is pointed to by plaintiff as holding that the poundage fee is not part of the costs and expenses of the first assessment.

Our Constitution, Art. 2, Sec. 24, provides:

"Private property shall not be taken or damaged for public use without just compensation. Such compensation, irrespective of any benefit from any improvements proposed, shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law. The commissioners shall not be appointed by any judge or court without reasonable notice having been served upon all parties in interest. The commissioners shall be selected from the regular jury list of names prepared and made as the Legislature shall provide. Any party aggrieved shall have the right of appeal, without bond, and trial by jury in a court of record. Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation. · The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken. In all cases of condemnation of private property for public or private use, the determination of the character of the use shall be a judicial question."

■■ Eminent domain is a special right of the sovereign, which must be exercised by and through the proper agencies. And it is settled law that the constitutional provisions are not a grant of power, but are limitations placed upon exercise of a power recognized as a necessary attribute of sovereignty. City of Tulsa v. Richmond, 123 Okl. 255, 253 P. 279; Harn v. State ex rel. Williamson, 184 Okl. 306, 87 P.2d 127; 18 Am.Jur. Eminent Domain, Sec. 7, et seq.

■ The provision of the constitution, supra, enjoins the condemnor to pay "just compensation" for the property condemned, and upon taking possession thereof the owner is entitled to the "immediate receipt" of the amount awarded. It is plain that the owner has an absolute right to the condemnation money, and the condemnor has neither right nor authority to impose any condition or obligation upon the owner's right. See Nichols on Eminent Domain, (3rd ed.) Vol. 3, Sec. 8.3.

■ Thus, as a practical matter, it seems clear that to hold the 1% poundage fee is not to be considered as part of the costs of the first assessment would result in nothing more than granting the condemnor a right to violate a recognized principle, by approving the condemnor's fixing of conditions relative to the owner's compensation. The condemnor, in effect, would be permitted to say to the landowner: "Here is the amount of the commissioners' award which we are ready to pay to you direct. You should accept such amount for, in the event it is paid into court then you are chargeable with 1% thereof by way of poundage fee, and thus actually you will receive less than full compensation for your property."

The just compensation for property taken by eminent domain must be considered in the light of what the owner has lost. City of Cushing v. Buckles, 134 Okl. 206, 273 P. 346. The measure of value of what the landowner has lost is fixed by the commissioners' award. If such amount represents the just compensation which he is entitled to receive for what has been taken, then any charge sought to be made up to the time of appraisal and payment, either to the landowner or into court, as a prerequisite of the exercise of the right to take, cannot rightfully be considered as anything other than a charge against the landowner for ascertaining the value of property taken from him under exercise of the sovereign's superior right. This unquestionably would be violative of the constitutional inhibition against the taking of

private property for public use without payment of just compensation. We are of the opinion the 1% poundage fee (allowed by statute) is a proper part of the costs of the first assessment, and must be borne by the condemnor.

Defendants also contend as follows:

"Where the condemnor appeals from the Commissioners' award, so much of 66 O.S.1951, Sec. 55, providing "If the party demanding such trial does not recover a verdict more favorable to him than the assessment of the Commissioners, all costs in the district court may be taxed against him", is violative of Article 2, Section 24, of the Constitution in that "just compensation" requires the condemnor to pay all costs created by its action to and including time of judgment."

Briefly stated, 66 O.S.1951 § 55, provides for review of the commissioners' award by the district court; or alternatively of a jury trial upon demand of either party, in which case damages are to be assessed by the jury. And, in the event the party demanding a jury trial does not receive a more favorable verdict than under the commissioners' appraisal, all costs in the district court may be assessed against such party.

Thereafter section 56 provides for appeal to this court from the district court's decision by either party and " * * * in no case shall said corporation be liable for the costs on such review or appeal, unless the owner * * * shall be adjudged entitled, upon either review or appeal, to a greater amount of damages than was awarded by said commissioners. The corporation shall in all cases pay the costs and expenses of the first assessment."

In Grand River Dam Authority v. Jarvis, 10 Cir., 124 F.2d 914, 917, the majority opinion points out that when literally construed an apparent conflict exists between these two sections of the statute concerning the assessment of costs arising subsequent to the commissioners' award, but then states:

"However, a rational consideration of the two sections together leads to the conclusion that the award of the commissioners constitutes prima facie adjudication or just compensation; that if either party is aggrieved it may appeal, and if it is successful in overturning the award it is entitled to recover the costs of such review or appeal, but if unsuccessful the court may in its discretion tax the costs against the unsuccessful party."

However, defendants insist the proper rule is announced in the dissenting opinion (Phillips, J.), since the Federal court specifically declined to declare unconstitutional a statute theretofore not considered by this court. Defendants' argument, based upon the dissenting opinion, is that: (a) where the condemnor appeals from the commissioners' award the owner is entitled to costs regardless of the outcome; (b) only in the event the owner appeals from the commissioners' award and such award is decreased by a jury verdict is the condemnor entitled to costs arising subsequent to the first assessment. We are unable to arrive at the conclusion so reached by defendants.

As pointed out in the Jarvis case, supra, there are two lines of authority respecting this question. One line of authority holds that upon appeal no costs may be assessed against the owner, without regard to which party took the appeal or to the eventual outcome thereof. See Lewis on Eminent Domain, Sec. 559; City of Oakland v. Pacific Coast Lumber & Mill Co., 172 Cal. 332, 156 P. 468, Ann.Cas.1917E, 259. This rule is based upon the principle that an appeal constitutes merely another step in condemnation proceedings by which it is sought to establish the owner's compensation, so that no part of the costs may be assessed against such owner, on appeal by the condemnor.

The other line of authority, which announces what we conceive to be the better rule, is to the effect that condemnation proceedings end at the point where an award has been determined by the "tribunal established for that purpose." Thereafter an appeal constitutes a separate proceeding, so that allowance of costs on appeal does not violate con-

stitutional provisions requiring just compensation to landowners whose property is taken by eminent domain. Music v. Big Sandy, etc., R. Co., 163 Ky. 628, 174 S.W. 44, Ann.Cas.1916E, 689: Moffat v. City and County of Denver, 57 Colo. 473, 143 P. 577. Recognition and acceptance of this rule supports the conclusion that the assessment of costs against defendants was proper, and was not in violation of the constitutional provisions, Art. 2, Sec. 24, requiring the condemnor to pay just compensation for property taken.

Defendants also contend the trial court erred in entering judgment against them for interest on the difference between the amount of the commissioners' award and the compensation allowed by the jury, calculated from the date the commissioners' award was disbursed to defendants. Reliance is placed in the Federal Court's decision in the Jarvis case, supra, wherein the trial court's judgment, against the landowner for interest from the date of judgment upon the amount by which the commissioners' award had been reduced as a result of a jury trial, was reversed. The reasoning, upon which such reversal was based, was that the commissioners' award was presumptively correct, so that until the amount finally was determined by appeal, the claim for refund by reason of having paid the award into court constituted an unliquidated claim, incapable of ascertainment, upon which interest can never be allowed.

In an effort to sustain the trial court's judgment allowing interest against defendants the plaintiff relies upon our decisions in St. Louis El Reno & Western Ry. Co. v. Oliver, 17 Okl. 589, 87 P. 423; Oklahoma City v. Wells, 185 Okl. 369, 91 P.2d 1077, 123 A.L.R. 662; Grand River Dam Authority v. Grand-Hydro, 200 Okl. 157, 201 P.2d 225; Cities Service Gas Co. v. Huebner, 200 Okl. 521, 197 P.2d 985. Examination of these cases discloses that in each instance the question considered involved the allowance of interest on the money value fixed by the jury, over and above the amount set by the commissioners' award, as of the date of the taking.

The rule announced is expressive of the weight of authority. See 18 Am.Jur. Eminent Domain, Sec. 272. However, it seems clear the difference in factual situation precludes application of the rule to the present case.

 Although not called upon heretofore to pass upon this precise question, we are of the opinion that a complete answer thereto is to be found in the language of 66 O.S.1951 § 54, which provides:

"When possession is taken of property condemned, as provided herein, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of said compensation."

And, further, Art. 2, Sec. 24 of our constitution specifically provides that when the condemnor takes possession of property condemned for public use the owner "* * * shall be entitled to the immediate receipt of the compensation awarded * * *." The underlying principle of the law of eminent domain is that the owner must receive full and equivalent compensation for the loss sustained. The landowner's right to draw down the compensation money is specifically provided, both by the constitutional provision and our statute. The condemnor is given a choice of paying the landowner, or paying the money into court, as was done here. However, it could not be contended, in the event a landowner choose to leave the money in the registry of the court and then suffered a reduction in the compensation as a result of a jury verdict, that the condemnor would be entitled to receive interest on the money impounded in the court.

In 29 C.J.S., Eminent Domain, § 333 (b), page 1386, it is stated:

"Where the award has been paid into court, and the amount finally awarded is less than that deposited, the condemnor is not entitled to interest on the balance; and this is so, it has

been held, even though the money deposited was turned over to the landowner. * * *"

In St. Louis, K. & N. W. Ry. Co. v. Knapp, Stout & Co. Company, 160 Mo. 396, 61 S.W. 300, the question herein presented was considered under an identical fact situation. Therein, as here, it was urged that since the landowner is entitled to interest on the commissioners' award and that the rule should of necessity, work both ways. This argument was held to be of no force, since the landowner's property was taken and the law required the money to be put up for the landowner's protection. Although forced to do without use of its money, this simply amounted to a part of the price required by statute. We think this rule is founded in reason and presents a logical solution of the matter. We therefore conclude that the trial court erred in rendering judgment for plaintiff for interest on the difference between the commissioners' award and the compensation granted upon a jury verdict.

 Defendants last contend the trial court erred in sustaining objections to evidence offered by defendants' witnesses as to the amount of profits derived from use of the property in issue, and profits reasonably expected from such property. This argument is based upon the trial court's rejection of defendants' proffered testimony concerning profits derived from the ranch land. Defendants insist that, since fair market value is the controlling test for fixing compensation for land taken by eminent domain, they should have been permitted to show the profits derived from the ranch as tending to establish reasonableness of the value fixed by their evidence. This argument is based upon the decision in City of Cushing v. Pote, 128 Okl. 303, 262 P. 1070, wherein it is said:

"In this jurisdiction the rule is well settled that, in ascertaining the value of land taken under eminent domain, its market value is the test, and its adaptability to a particular use may be considered as one of the factors in ascertaining its market value, and evidence may be introduced to show such adaptability. Therefore,

when the witnesses testified as to the value of this land and as to its adaptability for agricultural purposes in order to show the reasonableness or unreasonableness of the value they placed upon it, we can see no impropriety in permitting them to testify as to the amount of crops it has yielded and the price for which such crops were sold. However, evidence as to the amount of the crops grown or the price obtained therefor should not be considered for any purpose except to shed light upon the reasonableness of the value fixed by the evidence of the witnesses."

See also Lawton Rapid Transit Ry. Co. v. City of Lawton, 31 Okl. 458, 122 P. 212.

We are unable to attach the significance to this matter that defendants purport to draw from the trial court's action in this connection. Conceding that, under the rule above quoted, such testimony may be admissible for the sole purpose specified, it is impossible to see wherein substantial injustice was done defendants. The evidence developed at length the nature and location of this ranch, the peculiar adaptability of the land for ranch purposes and the extent of the ranching operations which could be carried on successfully before the condemnation proceedings, as compared to the extent and necessitous methods of operation which would result by reason of the taking of this portion of the land. The proffered testimony could have served no purpose other than to be considered as an additional factor, or element, toward showing reasonableness of market value already established by other evidence. The admissibility of evidence of value in condemnation cases is more largely within the trial court's discretion than determination of other issues, so that error predicated upon the exclusion of certain evidence will not be sustained except in cases of manifest error. Nichols on Eminent Domain v. 5 (3rd ed.) Sec. 18.11. And where, after examination of the entire record, it does not appear that the error complained of in rejection of certain evidence constituted a substantial violation of a constitutional or statutory right the

case will not be reversed. See Empire Oil & Refining Co. v. Fields, 188 Okl. 666, 112 P.2d 395, appeal dismissed, 314 U.S. 572, 62 S.Ct. 79, 86 L.Ed. 463.

The judgment rendered charged defendants with the poundage fee as part of the costs of the action, and also charged them with interest upon the balance or difference between the amount of the commissioners' award and the amount allowed by the jury from the date of withdrawal of such funds. The judgment is reversed with directions to enter judgment for defendants as to these items. In all other respects the judgment is affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, D A V I S O N and O'NEAL, JJ., concur.

ARNOLD, WILLIAMS and BLACKBIRD, JJ., concur except as to the disallowance of interest to which they dissent.