The CITY OF PRYOR CREEK, Oklahoma, a municipal corporation, Appellant,

v.

PUBLIC SERVICE COMPANY OF OKLA-HOMA, a corporation, Appellee.

No. 46252.

Supreme Court of Oklahoma.

June 3, 1975.

Lyons & Dean, by Larry D. Stewart, Pryor, for appellant.

Doerner, Stuart, Saunders, Daniel & Langenkamp, by Robert L. Lawrence, R.

Dobie Langenkamp, Stephanie K. Seymour, Tulsa, for appellee.

Huffman, Arrington, Scheurich & Kihle, by John L. Arrington, Tulsa, amicus curiae Okl. Natural Gas Co.

Randolph S. Meacham, City Atty., Duncan, amicus curiae City of Duncan, Okl.

Haswell & Gordon by J. Dell Gordon, Oklahoma City, amicus curiae Municipal Electric Systems of Okl.

HODGES, Vice Chief Justice.

The question presented is whether a municipality by eminent domain without specific statutory authority, may condemn a privately owned public utility's facilities and utilize them for the same purpose.

This is an appeal from the order of the trial court which sustained Public Service Company of Oklahoma's (PSC) objection to the report of commissioners and motion to dismiss in a condemnation proceeding instituted by the City of Pryor Creek (City). The Court of Appeals reversed the trial court and PSC seeks certiorari.

After annexing the real property served by PSC the City filed an action to condemn public utility facilities owned by PSC which were in operation and providing electricity. The City planned to utilize the facilities for the same purpose.

The following facts were stipulated by the parties in the trial court: PSC is an Oklahoma Corporation engaged in the business of public distribution of electricity in the State of Oklahoma; The City is a municipal corporation operating under a home rule charter which provides that the city has the power to condemn light, power and electrical distribution plants within its territorial limits. The City engages in the business of electrical distribution. The property to be condemned by the City consists of personalty in the form of electric distribution facilities located on a private easement. PSC does not utilize the streets or right-of-way of the City nor does it possess a franchise granted by the City. The area in question was annexed over the landowner's objection after electrical service had been provided by PSC.

Commissioners were appointed by the District Court. Both parties filed objections to the report upon its return. The trial court sustained PSC's objections and dismissed the condemnation proceedings.

It is argued by PSC that powers of eminent domain granted to municipalities under general state laws do not authorize the condemnation attempted in the present case and that condemnation powers granted by the City Charter which are broader than these provided under general laws of the state are void.

■ The City contends that the legislature has by implication granted municipal corporations in Oklahoma the power to condemn a public utility whose property is devoted to a public use. It relies on 11 O. S.1971 §§ 563, 670 for authority. We have carefully examined the statutes and find that this power is not delegated to municipalities by these statutes.

■ The right of eminent domain is an attribute of sovereignty which belongs to every independent government and requires no constitutional recognition. It is the power to take private property for public uses by the state at large, local municipal bodies, or by private persons or corporations authorized to exercise functions of public character. United States v. Jones, 109 U.S. 513, 3 S.Ct. 346, 27 L.Ed. 1015 (1883). Eichman v. Oklahoma City, 84 Okl. 20, 202 P. 184 (1921). Harn v. State ex rel. Williamson, 184 Okl. 306, 87 P.2d 127 (1939). The constitutional provisions relating to eminent domain are not grants of power but limitations placed upon the exercise of power. Kelly v. Oklahoma Turnpike Authority, 269 P.2d 359 (Okl. 1954).

■■ The enactment of laws which enable municipalities to exercise eminent domain is within the legislative power of the state. The fundamental power to exercise the right to acquire property by eminent domain lies dormant in the state until the

Legislature by specific enactment designates the occasion, modes, and agencies by which it may be placed in operation. In the absence of statutory authority, municipalities may not exercise such power. Fischer v. Oklahoma City, 198 Okl. 22, 174 P.2d 244 (1946); Oklahoma City v. Local Federal Savings & Loan Assn. of Oklahoma City, 192 Okl. 188, 134 P.2d 565 (1946).

■ The constitution and general laws of state-wide concern control over conflicting city charters. The power of eminent domain is of state-wide interest and importance. This right cannot be extended and expanded by provisions of the city charter.

We held in City of Sapulpa v. Land, 101 Okl. 22, 223 P. 640, 645, 35 A.L.R. 872 (1924):

"The contention that cities operating under a freeholders' charter form of government have the power to determine what are purely municipal affairs, and, once having determined through the municipal legislative body legislating within the authority granted by the municipal charter such matter is binding upon the state, is untenable. The fallacy of this contention is obvious. It is a well-settled principle of law that there can be but one sovereign power in the government of a state. As said by Mr. Justice Timlin in State ex rel. Mueller v. Thompson, 149 Wis. 488, 137 N.W. 20, 43 L.R.A.(N.S.) 339, Ann.Cas.1913C, 774, "As well might we speak of two centers in a circle as two sovereign powers in a state." This is fundamentally contrary to our form of institutions. Under our national and state organizations a municipal city government is only possible as an administrative agency of the state having that measure of local self-government granted by the supreme sovereign power, and all local laws of such municipality must be consistent with our fundamental principle of government, and always subject to the con-

trol of the state. State ex rel. Mueller v. Thompson, supra."

■ The general rule is that property already legally appropriated to a public use is not to be afterwards taken by a municipality for a like use unless the intention of the Legislature that it should be so taken has been manifested in express terms or by necessary implication. Marsh Mining Co. v. Inland Min. & Mill Co., 30 Idaho 1, 165 P. 1128, 1129 (1917), 29 C.J.S. Eminent Domain § 75 p. 333. See also Springfield v. City of Perry, 358 P.2d 846 (Okl.1961). To hold otherwise would amount simply to the taking of property from one and destroying his right to operate although expressly authorized to do so, and giving it to another without any benefit to the public. Samish River Boom Co. v. Union Boom Co., 32 Wash. 586, 73 P. 670 (1903).

The power to condemn property devoted to the same public use is given to the municipality by 18 O.S.1971 § 437.2(k). This statute provides that if an area previously served by a Rural Electric Cooperative becomes annexed to a municipality, the cooperative upon request shall transfer the electric distribution facilities to the municipality. Compensation is to be determined either by agreement, or if there is a lack of agreement by proceedings in the district court. This authority is also given under the Urban Redevelopment Law, 11 O.S.1971 § 1613.

It is clear that the Legislature was aware that the general powers of eminent domain under 27 O.S.1971 § 5, 11 O.S. 1971 § 563, 670, and Art. 2 § 24 of the Oklahoma Constitution were not sufficiently broad to permit condemnation of property of a pre-existing public utility already devoted to the same public use as contemplated by the municipality seeking to condemn it. Otherwise, the Legislature would not have adopted specific statutes i. e., (18 O.S.1971 § 437.2 and 11 O.S.1971 § 1613) to deal with these problems.

■ Under Oklahoma law, the power of a governmental body subordinate to the state to acquire an existing electrical

plant or system to subject it to the same use is dependent on statutory authority. The power of a municipality to take property of a public service corporation for public utility purposes must rest upon legislative authority either granted expressly or by necessary implication. General authority to exercise the power of eminent domain is insufficient. A charter provision which attempts to designate authority to a city to condemn a public utility is void. All provisions in the charter of a municipality must be consistent with and are subject to the Oklahoma Constitution and the general laws of the state. Okla.Const. Art. 18 § 3(a).

██ An examination of the Constitution and statutes of the State of Oklahoma discloses that authority has not been granted to a municipal corporation to take, either expressly or by implication, under the power of eminent domain, property already devoted to the same public use for which the municipality seeks to condemn it.

Reversed. The judgment of the trial court is affirmed.

DAVISON, IRWIN, LAVENDER, SIMMS and DOOLIN, JJ., concur.

WILLIAMS, C. J., and BERRY and BARNES, JJ., dissent.

BARNES, Justice (dissenting):

I respectfully dissent to the Majority Opinion for the following reasons:

11 O.S.1971 § 670 provides that cities and towns may take private property for public use for *any* necessary purpose, but provides that the city in such cases shall pay for said property. The compensation for the property to be determined as provided for condemnation for railway purposes. There is no question but that the line in question here is the private property of the Public Service Company of Oklahoma, devoted to public use [maybe], but this does not make it public property. Therefore, the property *does* come under the provisions of 11 O.S. § 670 and the

statute is specific, direct and absolute authority for the taking of the electric line proposed by the City of Pryor.

The Majority Opinion brushes off the application of 11 O.S.1971 §§ 563 and 670 as authority for the taking of the electric line by the City of Pryor Creek from PSC with the statement that "We have carefully examined the statutes and find that this power is not delegated to municipalities by these statutes."

Whether the particular line is devoted to public use at all seems questionable. It appears to have been erected under a lease upon the land of the only customer served. PSC apparently had made no dedication to public use, and has not held itself out to serve any other person in the area. Hence the arguments based on the allegation that property devoted to a public use cannot be condemned are not supportive of PSC, even were they good law.

In Oklahoma, the law is not that a municipality may not condemn property constituting an existing public utility in order to use that property in the operation of its own utility service. The legal situation is that cities are authorized by two self-executing constitutional provisions, Art. X, § 27, and Art. XVIII, § 6, specifically granting to municipalities the authority to own and operate all sorts of public utilities. One way to do this, the most practicable way where a privately owned utility is operating in the municipality, would be to acquire that plant, by voluntary negotiation or by eminent domain. There is, therefore, no public policy against municipal condemnation of a privately owned utility system. In fact, the decision of Incorporated Town of Pittsburg v. Cochrane, 195 Okl. 593, 159 P.2d 534, cited by both parties, by necessary inference, supports that proposition. In that case, water service under a franchise had been dropped by an impecunious public utility and the town had taken over operations. The mortgagee of the property sought to require surrender to it. The court held for the town, subject to the obligation of the town to make com-

pensation. While it is true that the franchise apparently had expired, the court expressly stated that, at the expiration, the franchise holder could not quit service and take up its property, but that an obligation to continue service under the terms of the franchise continued, subject to termination by either party after reasonable notice and opportunity for a substitute service to be provided. Obviously, such provision for a substitute service was exactly what the Town of Pittsburg had done, and the property owner's recourse was through inverse condemnation for the value of the property. Conversely, the Town could have instituted condemnation proceedings itself, and so might any other municipality desirous of taking over a plant operating within its boundaries.

Whatever Oklahoma City v. Local Federal Savings & Loan Association of Oklahoma City, 192 Okl. 188, 134 P.2d 565, may stand for, it obviously must be limited to a case where the municipality seeks to condemn property to devote it to an entirely different public purpose, and hence to destroy the facility for rendering a public service rather than to continue it in operation, as in the case presented by the Pittsburg case.

The contention that the authorized condemnation of a privately owned public utility's property is a forbidden regulation of the utility's business is, of course, without legal validity. When condemnation is accomplished, there will be nothing to regulate, and the condemnation proceedings themselves, until terminated, do not effect regulation.

The contentions that the municipality must show a necessity for acquisition of the utility property, and that this is not established by the mere passage of a resolution stating necessity is insufficient, are not supported by the authorities. In Delfeld v. City of Tulsa, 191 Okl. 541, 131 P. 2d 754, the Court expressly stated that in such a resolution "there was presented a prima facie case that *the use to which the property was to be put was a public use*; and, when landowner denied such contemplated use was a public use, it was proper for trial court to require him to assume burden of proving such use was not a proper public use." [Emphasis ours.] Note from the emphasized words that it is the use of the property as a public use, which is in issue, *not* whether the patrons can be served by the owner of the property as PSC seems to contend. Obviously, the operation of a utility plant by a municipality in the exercise of its constitutional authority *is* a public use.

The argument in the Majority Opinion, that the Legislature was aware that the general powers of eminent domain were not sufficiently broad to permit condemnation of property of a pre-existing public utility already devoted to the same public use, is based upon the erroneous assumption that 18 O.S.1971 § 437.2 and 11 O.S. 1971 § 1613 support that conclusion.

The fact that the Legislature enacted 18 O.S.1971 § 437.2, which provided for Rural Electrification Cooperatives [REC] to continue operation in an area which was later included within the boundaries of a city, town or village without obtaining the consent, franchise, license permit or other authority of the city, town or village, and further provided that if the city, town or village operated its own electric system, then on the city's request the cooperative would transfer their facilities to the city, does not mean that the Legislature intended anything other than to provide a special summary procedure whereby the transfer could be expeditiously made. 11 O.S.1971 § 1613 provides for condemnation of property already devoted to a public use by an Urban Renewal Authority and not by a city, and is, therefore, not applicable to this case.

I would, therefore, hold that 11 O.S.1971 § 670 authorizes Appellant, City of Pryor Creek, to take the property in question by eminent domain.