CRIMES AND PUNISHMENT
Any municipality may form an auxiliary police force. A municipality organized without benefit of home rule charter is limited to appointment and use of auxiliary police pursuant to the Oklahoma Civil Defense and Emergency Resources Management Act, codified as 63 O.S. 863.1 [63-863.1] et seq. (1971), as amended, and absent further legislation, may not use auxiliary police to perform the functions of a police officer apart from the civil defense program. A chartered home rule municipality organized under the Oklahoma Constitution, Article XVIII, Section 3, may through appropriate legal procedure provide for auxiliary police to augment regular police officers. Although the governing of such auxiliary police would be a function of the home rule municipality, the appointments, qualifications and duties of those who exercise police power are matters of state-wide concern and therefore, subject to appropriate limitations, restrictions, requirements or regulations as may be provided by state law. (70 O.S. 3311 [70-3311] (1977), as explained in Attorney General Opinion No. 75-170). Chartered home rule municipalities may empower auxiliary police officers, upon being duly appointed, to have all the duties and powers of regular police officers, including the carrying of firearms and powers of arrest, to be governed in all respects in the performance of their duties in the same manner as required police officers. (Attorney General Opinion No. 75-170). Appointments made by a sheriff are governed by special statutes, as exhaustively reviewed in Attorney General Opinion No. 75-265 and this opinion should not be construed to address such appointments. The Attorney General has received your request for an opinion wherein you ask the following questions: "(1) Does a city have the right to form a Auxiliary Police Force ? "(2) If so, may that Auxiliary Police Force function on a full-time basis as a sole entity of the police department apart from any civil defense program or in the case of a temporary 'declared emergency.' "(3) Is the Auxiliary Police Force an entity of the city and thus entitled to be governed by local ordinance? "(4) Do the officers of such an Auxiliary Police Force have all the duties and powers of a regular, full-time peace officer, including the power of arrest, or are their powers limited? "(5) And finally, may these officers of the Auxiliary Police Force carry firearms and other offensive weapons for protection of themselves and the public in which they serve?" The concept of delegation of power, especially with regard to "police power" is as expressed in 16 C.J.S., Constitutional Law, 177, pages 906 through 908, which section states in part: "Since the police power has not been delegated by the federal Constitution or the several states to the United States, it remains with the individual states. The legislature is primarily vested with the police power of the state and the power generally cannot be exercised by any group or body of individuals not possessing legislative power. . . ." As pertains to municipalities, 16 C.J.S., Constitutional Law, 178, page 901, states: "The police power of the states may, in the absence of any constitutional restrictions on the subject, be delegated to the various municipalities throughout the state, to be exercised by them within their respective corporate limits, or even beyond where expressly authorized by statute or charter, even though the effect of the delegation is to commit to the municipal authorities a measure of discretion with respect to the circumstances under which the powers, thus delegated shall be made effective." This statement of law has been followed in Oklahoma as cited in Shinn v. Oklahoma City,87 P.2d 136 (1939) and Amis v. Bryan Petroleum Corporation, 90 P.2d 936 (1939). However, the municipality may not delegate its police power to any organization, Attorney General Opinion No. 74-212. Oklahoma Constitution, Article XVIII, Section 3, provides that any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state. Upon approval, such charter becomes the organic law of the city. In the ambience of municipal government, the word "charter" is a word of art and can only refer to a municipal charter adopted as constitutionally provided at an election for that purpose and upon compliance with procedural provisions constitutionally enjoined or conformably with related statutes, Morehead v. Dyer, Okl., 518 P.2d 1105 (1974). A city which adopts a home rule charter has the power to enact and enforce ordinances to protect the public peace, order, health, morals and safety of its inhabitants even though general statutes exist relating to the same subjects, Moore v. City of Tulsa, Okl., 561 P.2d 961
(1977). A city adopting a charter is accorded full power of self-government, King v. City of Tulsa, Okl. Cr.,415 P.2d 606 (1966) and although the Constitution and general laws of statewide concern control over city charters which conflict therewith, City of Pryor Creek v. Public Service Company of Oklahoma, Okl., 536 P.2d 343 (1975), Sublett v. City of Tulsa, Okl., 405 P.2d 185 (1965), such charter supersedes all laws of the state in conflict therewith insofar as such laws relate to merely municipal matters, Lee v. Norick, Okl., 447 P.2d 1015 (1968). Municipal forms of government operating under a charter have the power to pass appropriate ordinances as long as those ordinances comport with due process and are reasonable in scope as set forth in statutory limitations, Attorney General Opinion No. 73-130 (March 30, 1973). Powers of non-charter municipalities are either expressly granted or necessarily implied from a statute, Morehead v. Dyer, supra. A policeman is by statute a peace officer and has a duty to enforce and preserve the public peace, 21 O.S. 99 [21-99] (1971). A policeman is a duly appointed person who is authorized to bear arms in execution of his responsibilities, which includes enforcement not only of city ordinances, but also the laws and orders of this state, 21 O.S. 648 [21-648] (1971). Therefore, it is clear that the appointment of a policeman is not one which relates to merely municipal matters, but is one of statewide concern and such appointment by a municipal government, whether chartered or non-chartered, is subject to regulation by the state. The State has promulgated standards for peace officers, including policemen, through the enactment of 70 O.S. 3311 [70-3311] (1977). Paragraph F thereof provides that no person shall receive a permanent appointment unless certain testing and education requirements have been met. If such requirements are not fulfilled within one year from the date of appointment, the position shall be forfeited. Other language therein defines a police or peace officer as "a full-time duly appointed or elected officer, whose duties, are to preserve the public peace, protect life and property, prevent crime, serve warrants, enforce all laws and city ordinances of this state, and any political subdivision thereof; . . ." Turning to the questions concerning auxiliary police, the only specific grant of authority to municipalities is found in the Oklahoma Civil Defense and Emergency Resources Management Act of 1967, codified as 63 O.S. 683.1 [63-683.1], et seq. (1971), as amended. Civil defense is defined in 63 O.S. 683.3 [63-683.3] (1977), which provides for trained volunteer civilian persons to carry out certain functions, including police services. However, as expressed by language in the act, the clear purpose is to deal with emergency situations resulting from disasters such as enemy attack, tornado, flood, etc. The act does not address auxiliary support to augment regular police forces on a routine or non-emergency basis. Since no statutory authority exists authorizing such augmentation of regular police forces, the remaining issue is whether municipalities, absent statutory authorization, may nevertheless provide additional police services through the use of nonpaid personnel, whether labeled "auxiliary police" or "reserve police." Since the general laws of this state do not provide for nor prohibit auxiliary police outside the scope of the Civil Defense Act previously cited, it appears that a home rule charter municipality may create and regulate an auxiliary police force, subject to the Constitution and laws of the state, while a non-chartered municipality may not create an auxiliary police force outside the Civil Defense Act without further express statutory authorization. Since 70 O.S. 3311 [70-3311] (1977) requires police officers to meet training standards promulgated therein, a municipality may not defeat the purpose of this requirement via use of auxiliary or reserve officers. As pointed out in Attorney General Opinion No. 75-170, no person shall receive a permanent appointment to perform the regular duties of a police officer without meeting the requirements in 70 O.S. 3311 [70-3311]. See also, Opinion of the Attorney General, No. 75-211. A practical impediment exists for the training of such auxiliary officers, since paragraph F and subparagraph 4 of 70 O.S. 3311 [70-3311] limits the training to full-time officers. The only exemption is found in paragraph F, subparagraph 2, which provides that police departments offering basic police courses within their respective departments, approved by the Council on Law Enforcement Education and Training, shall be exempt from this section. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: In response to your first three questions, any municipality may form an auxiliary police force. A municipality organized without benefit of home rule charter is limited to appointment and use of auxiliary police pursuant to the Oklahoma Civil Defense and Emergency Resources Management Act, codified as 63 O.S. 683.1 [63-683.1] et seq. (1971), as amended, and absent further legislation, may not use auxiliary police to perform the functions of a police officer apart from the civil defense program. However, a chartered home rule municipality organized under the Oklahoma Constitution, Article XVIII, Section 3, may through appropriate legal procedure provide for auxiliary police to augment regular police officers. Although the governing of such auxiliary police would be a function of the home rule municipality, the appointments, qualifications and duties of those who exercise police power are matters of state-wide concern and therefore, subJect to appropriate limitations, restrictions, requirements or regulations as may be provided by state law. See, e.g., 70 O.S. 3311 [70-3311] (1977), as explained in Attorney General Opinion No. 75-170. In response to your fourth and fifth questions, chartered home rule municipalities may empower auxiliary police officers, upon being duly appointed, to have all the duties and powers of regular police officers, including the carrying of firearms and powers of arrest, to be governed in all respects in the performance of their duties in the same manner as regular police officers. See Attorney General Opinion No. 75-211. Appointments made by a sheriff are governed by special statutes, as exhaustively reviewed in Attorney General Opinion No. 75-265 and this opinion should not be construed to address such appointments. (BILL J. BRUCE)