JONES v. OKLAHOMA CITY.

No. 27047. Sept. 30, 1941.

Rehearing Denied May 11, 1943.

*137 P. 2d 233.*

W. K. Garnett and Chas. H. Garnett, both of Oklahoma City, for plaintiff in error.

A. L. Jeffrey, Municipal Counselor, Warren W. Connor, Asst. Municipal Counselor, and Jarman, Brown, Looney & Watts, all of Oklahoma City, for defendant in error.

J. H. Jarman and Thomas W. Caffey, both of Oklahoma City, amici curiae.

M. D. Green and John E. M. Taylor, both of Oklahoma City, amici curiae.

RILEY, J. This action involves the title to a parcel or tract of land about 123 feet by 100 feet, in Oklahoma City, formerly composing a part of the land occupied and used by the St. Louis & San Francisco Railway Company and now a part of the land occupied and used by the city as a public park.

The action was commenced by plaintiff in error, herein referred to as plaintiff, against the city of Oklahoma City, herein referred to as defendant.

In her petition, plaintiff stated a cause of action in ejectment and for the possession of said land or parcel of land, but further alleged that the defendant had taken possession of and was occupying and using same as a public park.

Plaintiff prayed for ejectment and for possession and for the value of the use and occupancy at the rate of $150 per

month from the date the defendant took possession thereof, viz., about December 19, 1929. She deraigned her title: by patent from the United States of America to Robert W. Higgins, dated September 19, 1896; and by warranty deed from Robert W. Higgins and Susan Higgins, his wife, to plaintiff, dated January 25, 1898.

Defendant asserts title by virtue of condemnation by the Oklahoma City Terminal Railway Company about June, 1900; by deed from said Oklahoma City Terminal Railway Company to the St. Louis-San Francisco Railway Company, dated October 19, 1901; receivership proceedings in the U. S. District Court, and a receiver's deed to Basil B. Elmer and William T. Phillips, dated August 29, 1916; by conveyance from Elmer and Phillips to the St. Louis-San Francisco Railway Company, and by deed from that company to defendant dated December 5, 1928; and denies that plaintiff owned any interest whatever in said tract of land.

Defendant by amendment to its answer alleged in substance that plaintiff was estopped to assert any right or title in or to the property by the fact that the proposal of the city to purchase said land, with other lands, from said railway company and to purchase other land from the Chicago, Rock Island & Pacific Railway Company and other large expenditures by the city in order to secure the removal of the tracks and other property of said railroad companies from the central business district of the city, was well known and extensively advertised, together with the fact that issuance of a large proposed bond issue was likewise well known, and plaintiff, having full knowledge of all these proceedings and facts, did not assert any claim to said land nor notify the defendant of such claim.

Defendant contends that in condemning said tract or parcel of land the Oklahoma City Terminal Railway Company acquired the absolute fee-simple title.

At the trial it developed that after the land had been so condemned, plaintiff conveyed all her land adjoining said railway property to L. F. Lee, and defendant now contends that the deed to Lee operated to convey whatever estate she might have had in the land theretofore condemned.

Trial of the issues resulted in judgment and decree for defendant, and plaintiff appeals.

The assignments of error are in substance that the judgment or decree is contrary to the evidence and contrary to the law.

Plaintiff produced proof showing the land was included in the quarter section patented to Robert W. Higgins September 19, 1896. She also proved conveyance to her of three acres of land in said quarter section, including the tract here involved, by Robert W. Higgins by deed dated January 25, 1898.

Defendant then proved conveyance by plaintiff and her husband to John T. Higgins of the east one-half of the three acres above mentioned by general warranty deed dated October 17, 1898. Defendant then introduced in evidence all the record pertaining to condemnation in the district court of Oklahoma county of the parcel of land here involved by the Oklahoma City Terminal Railroad Company, commenced May 19, 1900, and completed December 1, 1900. These proceedings appear to be regular and in conformity with the provisions of the statutes of Oklahoma Territory then in force providing for condemnation of land by railroad companies.

All that part of the one and one-half acre tract retained by plaintiff, except that part condemned by the Oklahoma City Terminal Railroad Company, was platted as a part of Main street addition to Oklahoma City, being platted as lots 22 to 26, both inclusive, in block 4, and lots 22 to 26 in block 5, of said addition. The plat was filed August 26, 1901.

Defendant also proved that plaintiff by deed dated February 18, 1901, con-

veyed to L. F. Lee a tract of land described as follows:

"Commencing at a point 534 feet west of the east line of section 33, township 12 north of range 3 west, Indian Meridian, along the south side of the St. Louis and San Francisco Railroad; thence west 123 feet along the St. Louis and San Francisco Railroad; thence south 200 feet to the Oklahoma City Terminal switch; thence east 123 feet along the north side of the Oklahoma City Terminal switch; thence north 200 feet to the place of beginning. This description is given to convey lots 22, 24, 25, 26, in block 5, Main street addition to the city of Oklahoma City, together with all improvements thereon and the appurtenances thereunto belonging, and warrant the title to the same."

Thereby plaintiff conveyed all her interest in any part of the land bordering on the right of way of the St. Louis & San Francisco Railroad Company.

The lots described by number in said deed are located immediately south of the tract here involved.

Defendant in support of the judgment of the trial court contends: (1) The Oklahoma City Terminal Railroad Company took fee-simple title to the land involved under and by virtue of the condemnation proceedings. (2) The deed by which the plaintiff conveyed her land adjoining the right of way to L. F. Lee operated to convey also whatever estate she had in the land included in the right of way.

If the first contention be sustained, it follows that plaintiff had no interest in the land under the right of way to convey to Lee.

Article 9, chap. 17, 66 O. S. 1941 § 1 et seq., Statutes of Oklahoma Territory 1893, includes the statutory provision in effect when the condemnation proceedings were had. Section 9 of said article, subd. 3, 66 O. S. 1941 § 7, subd. 3, gave every railroad corporation authorized to construct, operate, or maintain a railroad within the territory the power:

"To acquire under the provisions of this article or by purchase all such real estate and other property as may be necessary for the construction, maintenance and operation of its railroad, and the stations, depot grounds, and other accommodations reasonably necessary to accomplish the objects of its incorporation; to hold and use the same, to lease or otherwise dispose of any part or parcel thereof, or sell the same when not required for railroad uses, and no longer necessary to its use."

It may be noted that power is thereby given to acquire all such real estate and other property as may be necessary. A railway corporation might have acquired such real estate in either of two ways: First, under the provision of said article 9; or second, by purchase. The power is not only given to acquire, but to hold and use the same and to lease or otherwise dispose of any part or parcel thereof, or sell same when not required for railroad uses, and no longer necessary to its use.

Section 25 of said article provided that such railroad corporations had power and were authorized to enter upon land for the purpose of examining and surveying its railroad, and to take, hold and appropriate so much real estate as was deemed necessary, and: "May obtain the right to such real estate by purchase or condemnation in the manner provided by law."

Section 27 provided that any railroad corporation might purchase and use real property for a price agreed upon, and when the price was not agreed upon, the damages to be paid for any real property taken should be ascertained and determined by commissioners to be appointed by the judge of the district court. Section 28 provided the procedure for condemnation.

The statute did not specifically provide that the fee-simple title might be acquired by condemnation. Neither did the statute specifically limit the quantum of interest or estate to less than fee simple. At the time of statehood, limitation as to the quantum of interest or estate acquired under the power of eminent domain as to common carriers

was provided by section 24, art. 2, of the Constitution. No case is cited from this state construing the provisions of the statute in force prior to statehood as to the quantum of interest or estate when acquired under such proceedings.

The general rule now recognized is that the Legislature has the plenary power, not only to grant or withhold the right to exercise the power of eminent domain, but also to determine the quantum of interest or estate which may be acquired. The interest taken always depends on the construction of the statute authorizing the taking.

Generally, the applicable rule of construction to determine the extent of grant of power of eminent domain is held to be that its exercise is limited to the express terms or clear implication of the statute in which the grant is contained. So, if the statute expressly or by necessary implication declares that the fee shall be taken, the condemnor will acquire the fee specified. 18 Am. Juris. 740.

"The condemnor may be authorized to take a fee, but the authority to do so must be expressly given or necessarily implied from the language used in the statute." 20 C. J. 1223-24.

But where the language of the statute will bear that construction, courts as a general rule leave the fee in the landowner. 18 Am. Juris. 740-41.

With these general rules in mind we must look to the language used in the statute in force at the time the land here involved was taken by the Oklahoma City Terminal Railroad Company.

The statute was taken from Dakota in 1893. At that time it had not been construed by the courts of that state as to the character or extent of interest in land authorized to be taken thereunder.

But in Sherman v. Sherman, 23 S. D. 486, 122 N. W. 439, it is held that section 3002 of the Dakota Statute, same as section 30 of art. 9, chap. 17, Okla. Stat. 1893, authorized taking title in fee.

The court, after discussing the provisions of the statute, said:

"Under subdivision 3 of section 2980 (same as subdivision 3, sec. 9, art. 9, chap. 17, Okla. Stat. 1893) the Legislature intended that fee title should pass."

Again, in Hedger v. Aberdeen, B. & N. W. Railroad Co. et al., 26 S. D. 491, 128 N. W. 602, the Supreme Court of South Dakota held:

"The interest in land acquired by condemnation proceedings by a railroad under the laws in force in 1887 was a fee title."

In Sherman v. Sherman, supra, the Supreme Court of South Dakota in its opinion said:

"It seems to be quite evident that the legislative mind intended that a fee title should pass to the railway company, and that there is no way of escaping this conclusion. It is plainly apparent from the reading of the statute that the title to be acquired under these provisions is co-extensive and correlative with the power of holding and disposition of the lands so acquired."

It may be noted that both decisions of the court of South Dakota were after the statute had been adopted in the Territory of Oklahoma. There are many cases cited by plaintiff which hold that in condemnation proceedings under statutes, silent as to what interest passes to the condemnor, the fee will not pass but remains in the landowner.

But this case must be decided under the particular statute in force at the time. We agree with the reasoning of the Supreme Court of South Dakota. As pointed out, the statute then in force gave the railroad corporation power to acquire real estate, either by purchase or under the provisions of the article providing for condemnation, and whether acquired in either manner, power was given to hold and use the same, lease or otherwise dispose of any part or parcel thereof, or sell same when not required for railroad uses and no longer necessary to its use.

The power to sell when no longer

required for railroad uses is wholly inconsistent with the idea that only an easement was intended. It is difficult to understand why the power should be granted to sell, unless the Legislature intended to give the power to acquire some right, title, or interest that could be sold.

Plaintiff contends that the Legislature of Oklahoma Territory was not authorized by the Organic Act to grant railroad companies the power to condemn the fee title to land for a right of way, and that its power in that regard was limited by the provision of the Organic Act and the Constitution of the United States.

In this connection plaintiff points out that by the Organic Act the legislative power of the territory was made to extend to all rightful subjects of legislation, not inconsistent with the Constitution and laws of the United States, but that no law should be passed interfering with the primary disposal of the soil.

Primary disposal of the soil as there used meant original disposition of the soil or land within the territory of the United States; that is, that the territory could pass no law which in any way would interfere with the government of the United States in disposing of its title to public lands owned by the United States. Neither could the Legislature of the territory enact or the courts enforce any law in conflict with any statute of the United States or the Constitution of the United States.

No federal statute and no provision of the Constitution of the United States is pointed out which would conflict with the power to authorize condemnation of the fee of land owned by an individual.

The Oklahoma City Terminal Railroad Company, by the proceedings in condemnation, acquired the title in fee simple to the tract of land here involved.

It is unnecessary to consider the other questions raised.

The judgment is affirmed.

CORN, V.C.J., and OSBORN, BAYLESS, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C.J., absent.

---

Supplemental Opinion on Rehearing.

PER CURIAM. Oral argument was had herein on rehearing. It is insisted that, conceding that the condemnor might take a fee-simple title by condemnation, the proceedings herein purported only to take a lesser right, that is, only a "right of way," and not the land itself. This necessitates an examination of said proceedings to determine the extent of the interest acquired thereby.

The petition, filed May 19, 1900, recited that the petitioner, Oklahoma City Terminal Railroad Company, was authorized, under the provisions of art. 9, chap. 17, Statutes of Oklahoma 1893, to purchase real property for railroad and right-of-way purposes, and, if necessary, to appropriate the same by condemnation proceedings. The petition further recited the necessity for the taking of the land involved herein, describing the same; that it had endeavored to purchase said land from Estella Newell, the owner thereof, but that it had not been able to agree with her as to the price to be paid for the right-of-way and land taken; that Frank P. Newell was the husband of Estella Newell and claimed some interest in the land. The prayer of the petition was for the appointment of commissioners to appraise the damage to be sustained by Estella Newell by the appropriation of her land and by the building of the railroad and for the condemnation for the benefit and use of the company of "all the right, title and interest" of Frank P. Newell and all the interest, if any, of Thomas Newell, a mortgagee of said property.

Publication notice was issued to the owners of the land and the mortgagee notifying them of the filing of the petition, and that the prayer thereof was for appointment of commissioners to

assess the damages to be sustained by the construction of the road and for the land "necessary to be appropriated . . . for right of way purposes." On June 11, 1900, commissioners were appointed to assess the damages that the owner "of said land may sustain by reason of the condemnation and appropriation of land necessary for railroad and right-of-way purposes," and to determine and condemn the interest of Frank P. Newell, husband of Estella Newell.

On June 23, 1900, the commissioners appointed by the court subscribed to a written oath that they would inspect the property and consider the injury to be sustained by the owner by reason of the "appropriation of said real property for railroad purposes."

On June 23, 1900, the commissioners filed their report with the court to the effect that on June 23, 1900, they went upon the land and inspected the same and considered the injury and damage which Estella Newell would sustain by reason of the appropriation of the right-of-way across said land, and after finding that two specific parcels of land were necessary to the construction of the road, directed that said land be condemned and set aside for the use and benefit of the railroad company for right-of-way and railroad purposes. The first parcel was a tract consisting of .27 of an acre which was required for construction of the main line. The commissioners found *"the value of the land required"* for said main line to be $100," and resulting damage to the property not taken to be $60. The second was a parcel consisting of .068 of an acre necessary for the construction of an "S" line. It was found that *"the value of the land required"* for said 'S' line to be $40," and the damage to the remainder of the property not taken was $20. The total amount of damage awarded to Estella Newell was $220, which includes, in full, the amounts found to be the value of the land taken.

It is noted that the petition for condemnation of the property referred to the specific statutes authorizing it to acquire fee-simple title to property, thus indicating that the condemnation proceedings were instituted pursuant to said specific grant of power. Throughout the proceedings it is noted that when reference is made to the taking of the land the word "appropriation" is used. A well-understood meaning of the word "appropriate" is "to set apart for, or assign to, a particular purpose or use, in exclusion of all others." Webster's New International Dictionary; 3 Words & Phrases (Perm. Ed.) p. 803 et seq. It is noted that the parties also made use of the words "take" and "condemn." The word "take" is given a variety of meanings in the respective fields of the law wherein it is employed. "Condemnation" is an enforced sale, and the condemnor stands toward the owner as buyer toward seller. Jackson v. State, 213 N. Y. 34, 106 N. E. 758, L.R.A. 1915D, 492.

The law in effect at the time the property was condemned authorized the railroad to acquire a full fee-simple title. We find nothing in the condemnation proceedings indicating an intention on the part of the condemnor to take any lesser estate in the property condemned, and we therefore conclude that the parties intended to take such title as they were authorized and empowered to take under the applicable statute. We therefore hold that the title taken was a full fee-simple title.

CORN, C.J., GIBSON, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur. HURST and ARNOLD, JJ., concur in conclusion.