**OKLAHOMA CITY–ADA–ATOKA RAILWAY CO., a Corporation, Plaintiff in Error,**

**v.**

**H. C. ROOKER et al., Defendants in Error.**

**No. 38332.**

Supreme Court of Oklahoma.

Aug. 9, 1960.

Rehearing Denied Sept. 27, 1960.

James D. Gibson, Muskogee, Shelton D. Skinner, Shawnee, for plaintiff in error.

Pearson & Moon, Oklahoma City, Mc-Neill & McNeill, Tulsa, Saunders & Van Wagner, Abernathy & Abernathy, Shawnee, for defendants in error.

JOHNSON, Justice.

The Oklahoma City-Ada-Atoka Ry. Co., a defendant below and plaintiff in error herein, appeals from a judgment rendered in favor of plaintiff, H. C. Rooker, quieting title in the oil, gas and other minerals lying under a certain described portion of its road bed, or right of way, which it had obtained from its predecessor. Its predecessor's interest in the propery was obtained pursuant to condemnation proceedings brought in 1903 under the provisions of Article 9, Chap. 17, Okl.Statutes of 1893, 66 O.S.1951 § 1 et seq.

The railroad's right to an easement across plaintiff's land, or its continued use for railroad purposes, is unquestioned, but plaintiff contends, and the trial court found, that plaintiff owned the fee simple title to the property involved in the quiet title action, and that the railroad obtained only a "right-of-way" easement in the condemnation proceedings of 1903, brought pursuant to the 1893 statutes, supra. On the other hand, the railroad contends that under the 1903 condemnation proceedings its predecessor sought and obtained a fee simple title to the land in question, and that by reason

thereof it owned the oil, gas and other minerals in the property, and that Rooker had no interest, right or title to the oil, gas or other minerals under its right of way.

The plaintiff and defendant railroad stipulated that the only issue presented by this appeal is the legal interest and extent thereof of the defendant, Oklahoma City-Ada-Atoka Ry. Co. in the property.

The 1893 Statutes, supra, conferring power of eminent domain upon a railroad to acquire property for railway purposes through condemnation proceedings authorized but did not require that title acquired by or through such proceedings be a fee simple title. In fact, we have recently in the case of Missouri, K. & T. Ry. Co. v. Miley, Okl., 263 P.2d 415, 416, so held. Therein in the body of the opinion we said that the 1893 Statutes authorized a railroad to acquire a full fee simple title, but that a determination of whether or not a lesser right was taken, that is, only a "right-of-way" and not the land itself necessitates an examination of the condemnation proceedings to determine the extent of the interest acquired thereby. And, in the first paragraph of the syllabus of the Miley case, supra, following our previous holdings in Martin v. City of Bethany, 199 Okl. 57, 182 P.2d 517, and City of Cushing v. Gillespie, 208 Okl. 359, 256 P.2d 418, 36 A.L.R. 2d 1420, we said:

"1. In order for a fee simple title to be acquired under a statute conferring the power of eminent domain which does not require that such a title be taken, the *condemnation proceeding must clearly show an intention to acquire such a title and that such a title was in fact acquired under the condemnation decree.*" (Emphasis supplied.)

Though in Martin v. City of Bethany, supra, the action was brought by the city against Martin to quiet title to the mineral interest in lands formerly condemned for city public purposes and not for a railroad right-of-way as in the instant case or as in the Miley case, supra, yet the first paragraph of the syllabus in the Martin case is verbatim with the first paragraph of the Miley case (a railroad case) and the four paragraphs of the syllabus of the City of Cushing v. Gillespie case, supra, conclusively show that title acquired by condemnation proceedings will be generally confined or restricted to so much of the landowner's interest as the public need actually requires. That syllabus reads as follows:

"1. Statutes providing for the exercise of the power of eminent domain will be strictly construed.

"2. In determining the extent or quantum of estate taken by virtue of condemnation proceedings, the court will examine the statute authorizing the condemnation and the proceedings instituted pursuant thereto, and will determine what estate or interest is reasonably necessary to serve the public purpose in view.

"3. A condemner is not required to go to the full extent permitted by law, but may voluntarily restrict itself to so much of the landowner's interest as the public need actually requires.

"4. Where, in condemnation proceedings instituted pursuant to Title 11 O.S.1951 § 293, the record does not clearly show the extent or quantum of the estate taken; and where it is not shown that the public purpose in view requires the taking of title to the minerals; Held, that title to the minerals under the land involved does not pass to the condemner."

We now proceed to an examination of the condemnation proceedings to determine the extent of the interest that the railroad acquired through said proceedings. That is, whether or not the proceedings indicate that the railroad acquired a fee simple title or merely a "right-of-way."

In the application filed in the (1903) condemnation proceedings in controversy, it is stated:

"Fourth. That said line of railroad as now located and about to be con-

structed, crosses the following described land, owned by and belonging to J. W. Bales, in Pottawatomie County, Oklahoma Territory, to-wit: (land is described)

"That it is necessary for your applicant in the construction of said line of railroad to acquire a right of way consisting of a strip of land being all that portion of the (strip of land sought to be condemned is described)."

It was also stated in the application that the railroad had attempted to make amicable settlement with the (then) owners for the right of way so sought to be taken and appropriated and prayed that three commissioners be appointed to appraise and assess the damages sustained and to be paid by reason of the appropriation and condemnation of said right of way across said lands.

In the notice served on the landowners it was stated that the applicant (railroad) would ask for the appointment of three disinterested freeholders as commissioners to assess and appraise the damages which the landowners may sustain by reason of the appropriation and condemnation of a right of way over, through and across the land in controversy.

The order appointing the commissioners stated that the commissioners were appointed to "determine and appraise the compensation and damages by reason of the condemnation and appropriation of the land hereinbefore described, to be used for right-of-way and other railroad purposes."

In the report of the commissioners dated August 19, 1903, filed September 3, 1903, the commissioners stated that pursuant to their appointment "to appraise the compensation and damages to be paid to the. * * defendants by reason of the appropriation and condemnation of the land sought to be taken by the plaintiff in this action for right-of-way and other railroad purposes," they assessed damages therein in stated amounts, which amounts were thereafter paid to each defendant in accord with the commissioners' award and assessment.

■ No written exceptions to the commissioners' award were filed in the proceedings. This was the right and privilege of any party plaintiff or defendant affected by the proceedings. Art. 9, Railroad Corporations, Chap. 17, Sec. 28, Okla. Statutes of 1893. And unless exceptions were filed, no further proceedings were necessary beyond the payment of the condemnation money as therein fixed. Harn v. State, 184 Okl. 306, 87 P.2d 127.

■ The condemnation proceedings in no way, in our opinion, indicated an intention to take under the 1893 Statutes, supra, more interest in the lands than was necessary for the purpose of constructing and operating a railroad. We say this in view of the factual situation existing in 1903, and also being cognizant of the fact that our (Oklahoma) Constitution, Article 2, Sec. 24, provides that "the fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken." Thus, if the railroad has any interest other than a right of way easement, it is by reason of the 1893 Statutes. In construing such statutory provision, we have, in Carter et al. v. Davis, 141 Okl. 172, 284 P. 3, in the first paragraph of the syllabus, said:

"As a general rule, the appropriation of land under power of eminent domain does not give a fee-simple title, in the absence of a statute to that effect, but only a right to use and occupy the land for the purpose for which it was taken."

Therefore, under the facts and circumstances of the instant case, the trial court did not err in holding that under the 1903 condemnation proceedings the railroad obtained no more interest or title in the condemned property than the right to construct and operate its railroad on and across the lands of the persons owning said lands.

The railroad, however, contends that as a matter of law under the 1893 condemnation statutes, supra, and by the decree of the District Court that had jurisdiction of the

1903 condemnation proceedings, which was entered of record in the proceedings in April, 1904, when no exceptions to the commissioners' award had been filed or notice given to adverse parties of any further proceedings and after payment of the awards, established in it a fee simple title, which included the minerals, citing and relying principally on Jones v. Oklahoma City, 192 Okl. 470, 137 P.2d 233, 237, 155 A.L.R. 375.

We do not agree. See Harn v. State, supra. When the opinion and the supplemental opinion on rehearing in the Jones case, supra, are considered together, the opinion is in harmony with our holdings in the more recent case of Missouri, K. & T. Ry. Co. v. Miley, supra, and the other cases cited herein. The only difference is one of fact.

The contention of the railroad would have merit if the original opinion in the Jones case, supra, had not been modified by the supplemental opinion on rehearing. For instance, in the supplemental opinion in referring to the amount of interest to be taken in the proceedings it was said:

"*The prayer of the petition was for the appointment of commissioners to appraise the damage to be sustained by Estella Newell by the appropriation of her land and by the building of the railroad and for the condemnation, for the benefit and use of the company of 'all the right, title and interest' of Frank P. Newell and all the interest, if any, of Thomas Newell, a mortgagee of said property.*" (Emphasis supplied.)

Whereas in the instant case (see quotation, supra) in the application or petition it was stated "that it (is) was necessary * * to acquire a right of way consisting of a strip of land being all that portion of the strip * * *" (describing land).

Thus the proceedings in the Jones case clearly indicated an intention to take "all the right, title and interest" of the condemnees, while in the instant case the proceedings indicated the purpose of taking only a "right of way for railroad purposes." The distinction is obvious.

In the supplemental opinion of the Jones case, supra, relative to the interest taken, it was said:

"The law in effect at the time the property was condemned authorized the railroad to acquire a full fee simple title. We find nothing in the condemnation proceedings indicating an intention on the part of the condemner to take any lesser estate in the property condemned, and we therefore conclude that the parties intended to take such title as they were authorized and empowered to take under the applicable statute. We therefore hold that the title taken was a full fee simple title."

Under the foregoing authorities, and for the reasons given herein, the judgment of the trial court is affirmed.

WILLIAMS, V. C. J. and WELCH, JACKSON, and BERRY, JJ., concur.

IRWIN, J., concurs specially.

DAVISON, C. J., and HALLEY and BLACKBIRD, JJ., dissent.

IRWIN, Justice (specially concurring).

The 1903 Statutes (Article 9, Chapter 17, Oklahoma Territory Statutes, 1893), in effect at the time the condemnation proceeding was had provided that every railroad corporation in the Territory was authorized to construct, operate and maintain a railroad and had power:

"To acquire under the provisions of this article or by purchase all such real estate and other property as may be necessary for the construction, maintenance and operation of its railroad, * * *."

The supplemental opinion promulgated in Jones v. Oklahoma City, 192 Okl. 470, 137 P.2d 233, 238, 155 A.L.R. 375, stated:

"The law in effect at the time the property was condemned authorized the railroad to acquire a full fee simple

title. We find nothing in the condemnation proceedings indicating an intention on the part of the condemner to take any lesser estate in the property condemned, and we therefore conclude that the parties intended to take such title as they were authorized and empowered to take under the applicable statute. We therefore hold that the title taken was a full fee simple title."

It is apparent the Court did not hold that a railroad company instituting condemnation proceedings under the 1893 Act invariably acquired a fee-simple title but could acquire a lesser estate. However, it would seem the Court held if there is nothing in the condemnation proceedings indicating an intention on the part of the condemner to take any lesser estate than a fee-simple title, the condemner took all it was authorized and empowered to take, that is, a full fee-simple title.

In my opinion, the rule announced in the Jones case is in conflict with the rule in Missouri, K. & T. Ry. Co. v. Miley, Okl., 263 P.2d 415, 416, which construed the same condemnation statutory provision, wherein we held:

"In order for a fee simple title to be acquired under a statute conferring the power of eminent domain which does not require that such a title be taken, the condemnation proceeding must clearly show an intention to acquire such a title and that such a title was in fact acquired under the condemnation decree."

This case cited with approval the rule promulgated in Martin v. City of Bethany, 199 Okl. 57, 182 P.2d 517.

In the Jones case if the condemner was authorized to acquire a fee-simple title, such title was acquired unless an intention to acquire a lesser estate was indicated. In the Missouri, K. & T. Ry. Co. case, if the condemner was authorized but not required to acquire a fee-simple title, the condemnation proceedings must clearly show an intention to acquire a fee-simple title. Therefore, I am of the opinion the Missouri, K.

& T. Ry. Co. case overruled by implication the Jones case, and the present rule is that the condemnation proceedings must clearly show an intention to acquire a fee-simple title if such title is to be acquired.

There is nothing in the 1893 Act which requires a railroad company to acquire a fee-simple title although it authorizes a fee-simple title to be taken. Since the condemnation proceedings in the instant case, and as set forth in the majority opinion, do not clearly show an intention to acquire a fee-simple title, in my opinion the judgment should be affirmed.

I therefore concur specially in the opinion promulgated by a majority of my associates.

I am authorized to state WILLIAMS, V. C. J., and JACKSON and BERRY, JJ., concur in the views herein expressed.