CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, a Delaware Corporation, Plaintiff in Error,

v.

R. H. MORGAN, Jr., and Reah Belle Morgan, his wife, and Tom Morgan and Patricia L. Morgan, his wife, Defendants in Error.

No. 40679.

Supreme Court of Oklahoma.

Dec. 6, 1966.

Wayne B. Snow, Savage, Gibson, Benefield & Shelton, Oklahoma City, for plaintiff in error.

R. H. Morgan, Watonga, for defendants in error.

JACKSON, Vice Chief Justice:

In the trial court, plaintiffs (Morgan, et al.) filed an action to quiet their title to a certain quarter section of land in Blaine County, Oklahoma, through which the defendant railroad company had a right of way. Plaintiffs alleged that they owned the fee simple title to the quarter section, subject only to the railroad company's easement on a strip of land 100 feet wide. By answer and cross petition, the railroad company claimed the fee simple title to a strip of land 200 feet wide through the quarter section, and disclaimed any interest in the balance of the land.

The case was tried upon a stipulation of the parties, and various supporting documentary exhibits introduced under the stipulation. Under the pleadings and stipulation in this case, it is not disputed that the railroad company owns at least an easement upon a strip of land 100 feet wide, particularly described in the pleadings. The following pertinent facts are also undisputed: (1) plaintiffs' title stems from a County Treasurer's Resale Tax Deed dated and recorded May 11, 1942, which purports to convey the entire quarter section to plaintiffs' predecessors in title; (2) ad valorem taxes on the railroad company's property in Blaine County were paid by the railroad company for the years 1938, 1939, 1940 and 1941, upon a tax return to the Oklahoma Tax Commission, as provided in 68 O.S.1961, Sec. 15.26 et seq. (68 O.S. Supp.1965, Sec. 2445 et seq.); (3) beginning in June, 1901, the defendant's railroad company predecessor undertook condemnation proceedings on the 200 foot wide strip in the District Court of Blaine County, Oklahoma Territory, which were allegedly defective in certain particulars to be hereinafter noted, and the award of the commissioners was paid into court on January 15, 1902; (4) the defendant railroad company, and its railroad company predecessor in interest, have used "the property herein involved" for railroad purposes continuously since 1901.

It was further stipulated that the ultimate issues to be determined by the court were:

"(1) What is the width of the railroad right-of-way?

"(2) Is the estate owned by the railroad an easement or a fee simple title, which would include the mineral ownership, such as oil and gas and other minerals?"

The trial court made findings of fact and conclusions of law generally in favor of plaintiffs and against the defendant. There were specific findings that the condemnation proceedings instituted in 1901 "did not constitute legal proceedings as provided by statute and therefore did not effect a proper condemnation proceedings on said property"; that the defendant's use of the property for more than 15 years had ripened into a valid easement "upon the property now being used by said railroad company" but that the railroad company acquired no interest in the mineral estate thereby; that because of a certain Act of Congress to be hereinafter mentioned, the width of the right of way the company was entitled to use under its easement was 100 feet; that plaintiffs were the owners of the fee simple title to the entire quarter section, subject only to the 100 foot easement of the company. Judgment was rendered in accordance with these findings.

In the briefs in this court, plaintiff in error railroad company argues generally under four propositions that the judgment was contrary to the law and the undisputed facts.

After a careful consideration of the record and briefs before us, we have concluded that the judgment must be modified as to the width of the right of way, and we are unable to agree with some of the trial court's findings of fact and conclusions of law.

It should be remembered that the 1901 condemnation proceedings were not subject to the requirements of Art. 2, Sec. 24, Oklahoma Constitution.

The Court's finding that the 1901 condemnation proceedings did not constitute "legal proceedings" was undoubtedly based upon the plaintiffs' objection that such proceedings were defective from the procedural standpoint in that no petition or

application was filed, and in that there was no affirmative showing that the commissioners were sworn as required by law. It is conceded, however, that the landowner received the notice required by statute. In City of Seminole v. Fields, 172 Okl. 167, 43 P.2d 64, this court held:

"Where a city, vested with the power of eminent domain, enters into actual possession of land necessary for its corporate purposes, with or without the consent of the owner, and the owner remains inactive while valuable improvements are being constructed in close proximity to the property, the use of which improvements require a continued use of land, and the owner thereafter brings an action for damages to recover the total value of the land, the appropriation will be treated as equivalent to title by condemnation."

Substantially this same rule has been applied by this court in cases involving municipal corporations, City of Seminole v. Fields, supra, and Shell Petroleum Corporation v. Town of Fairfax, 180 Okl. 326, 69 P.2d 649; and also in cases involving public service corporations. Peckham et al. v. Atchison, Topeka and Santa Fe Ry. Co. et al., 88 Okl. 174, 212 P. 427, and Blackwell, Enid and S. W. Ry. Co. et al. v. Bebout, 19 Okl. 63, 91 P. 877, 14 Ann.Cas. 1145. In the last cited case, decided by the Supreme Court of Oklahoma Territory, the condemnation statutes under which the railroad company proceeded were the same as the ones involved in the case now before us (now codified as 66 O.S.1961, Sec. 51 et seq.). The rule has been applied in cases where the condemnation proceedings were, or may have been, merely defective, Shell Petroleum Corporation v. Town of Fairfax, supra, and also in cases where, as to the particular lands involved, there were no condemnation proceedings at all, St. Louis and S. F. Ry. Co. v. Mann, 79 Okl. 160, 192 P. 231.

Although none of the cases above cited were quiet title actions, in all of them, in one way or another, the cited rule was used

to justify the title or possessory rights of the condemnor. For instance, in Shell Petroleum Corp. v. Town of Fairfax, supra, the action by the town was for damages for the pollution of its water supply (a well), and the defendants alleged that, for reasons given, the condemnation proceedings by which the town acquired title to the well site were defective. In denying this defense, this court stated the rule as follows:

"Where a town vested with the power of eminent domain enters into actual possession of land necessary for its corporate purposes under condemnation proceedings in which there may have been some defects, and makes valuable and lasting improvements, and remains in continous possession thereof, without objection from the owner, for a long period of time, such appropriation will be treated as equivalent to title by condemnation regularly acquired."

█ █ Under the pleadings and stipulation in the case now before us, it is conceded, directly or indirectly, that (1) the defendant railroad company's predecessor had the power of eminent domain; (2) that it undertook allegedly defective condemnation proceedings in 1901; (3) that it entered into the actual possession of "the property herein involved" in 1901, and defendant has used it continuously for railroad purposes since that time; (4) that the defendant made lasting and valuable improvements and has remained in possession without objection from the owner. Although plaintiffs' petition alleges that the railroad company, "without need or authority, appropriated 200 feet of land" plaintiffs produced no evidence to support the affirmative allegation that the taking was without need or authority, and the stipulation that land has been used continuously since 1901 for railroad purposes amounts to a tacit concession that the land was "necessary for its corporate purposes". We therefore hold that, under the quoted rule from the Shell and City of Seminole cases, the title of the defendant railroad company to the right of way here concerned

is the equivalent of a "title by condemnation regularly acquired", and not merely a title by adverse possession.

█ Such being the case, we look to the condemnation proceedings for the answers to the two stipulated "ultimate issues" before the trial court. As to the first one (the width of the right of way), the condemnation proceedings clearly and explicitly describe a strip of land 200 feet wide. In this connection, we note also that plaintiffs alleged, and the defendant admitted, in the pleadings, that the railroad company had actually "appropriated 200 feet of land". We have previously noted that the trial court, in the judgment, limited the width of the railroad right of way to 100 feet because of the provisions of an act of Congress. This act is not precisely identified in the journal entry of judgment, but two different acts of Congress are suggested in the briefs. One of them is the Act of Congress of February 28, 1902, 32 Stat. 43, Part 1 (Chap. 134). Since the condemnation proceedings in this case were completed on January 15, 1902, this Act obviously could not be applicable. The other is the Act of Congress of March 2, 1899, 30 Stat. 990 (Chap. 374), relating to the acquiring of rights of way by railroad companies. This Act by its terms grants a right of way " * * * through any Indian Reservation * * * or through any lands held by an Indian tribe * * * or through any lands reserved for an Indian agency * * * or through any lands which have been allotted in severalty to any individual Indian under any law or treaty * * *". The stipulated evidence in this case (which was the only evidence) does not show that the land here concerned comes within any of the above listed classes. Concerning plaintiffs' chain of title, it was stipulated that the land was patented to Frank Pameticky on March 1, 1904; the condemnation proceedings, which began in 1901, show the name of the landowner as "F. Pameticky", apparently the same person. The fact that the condemnation proceedings took place over two years before

the lands were actually patented to Pameticky justifies the conclusion that he perfected his title under the Homestead Law, and not through any Indian claim. We therefore hold that the court erred in limiting the width of the right of way to 100 feet.

We now consider the second of the two "ultimate issues" before the trial court (whether the railroad company took a fee simple title or only an easement). On this question the defendant cites Jones v. Oklahoma City, 192 Okl. 470, 137 P.2d 233, 155 A.L.R. 375, and quotes the last paragraph of the supplemental opinion on rehearing at page 238 of the Pacific Reporter, wherein we said:

"We find nothing in the condemnation proceedings indicating an intention on the part of the condemnor to take any lesser estate in the property condemned, and we therefore conclude that the parties intended to take such title as they were authorized and empowered to take under the applicable statute."

Defendant then suggests that "under the applicable statutes there *must* be indicated in the condemnation proceedings an *intention* on the part of the condemnor to take an estate *lesser* than the fee simple estate, and unless such intention is shown, the full fee simple title is taken." Defendant's conclusion is incorrect. An examination of the supplemental opinion as a whole discloses that the court was simply discussing the facts in that case. We first pointed out all of the *facts* (in that case) which disclosed that the condemnor clearly intended to take a full fee simple title, and in the quoted language we pointed out that there were no facts to support an intention on the part of condemnor to take a lesser estate. Our present view of that case must be correct for in the body of the opinion it was pointed out that * * * where the language of the statute will bear that construction, courts as a general rule leave the fee in the landowner." Citing 18 Am. Jur. 740–41. The correctness of that con-

clusion is demonstrated in the Annotation in 36 A.L.R.2d 1424.

■ In the later case of Missouri, K. and T. Ry. Co. v. Miley, Okl., 263 P.2d 415, the following rule was stated in the syllabus by the court:

"In order for a fee simple title to be acquired under a statute conferring the power of eminent domain which does not require that such a title be taken, the condemnation proceeding must clearly show an intention to acquire such a title and that such a title was in fact acquired under the condemnation decree."

We therefore examine the 1901 proceedings to see if they clearly show an intention to take a fee simple title.

Defendant argues that the use of the following phrases in the 1901 condemnation proceedings clearly shows an intention to take a fee simple title: "strip of land two hundred feet wide"; "containing in all Eight and Eight Hundredths acres"; "will be taken and appropriated"; "said real property"; "appropriation of your land"; "appropriation of so much of said real estate"; "quantity of land"; and "real estate so taken".

We are unable to agree with defendant's conclusion. It is true that some of the same words and phrases were mentioned in other cases, cited by the railroad company, in which this court has held that a fee simple title was taken. However, in Midland Valley Railroad Co. v. Arrow Industrial Mfg. Co., Okl., 297 P.2d 410, a voluntary conveyance was involved, and this court pointed out that by the terms of 16 O.S.1951, Sec. 29, every estate in land which shall be conveyed by deed shall be deemed an estate in fee simple unless limited by express words. No deed is involved in the case now before us, and the "presumption" created by this section of the statute does not apply. Indeed, a "presumption" to the opposite effect is created by the quoted rule from Missouri, K. and T. Ry. Co. v. Miley, supra. For the same reason, Aubert v. St. Louis-San Francisco Ry. Co., 207 Okl. 537,

251 P.2d 190, also cited by defendant, is not applicable. In Jones v. Oklahoma City, 192 Okl. 470, 137 P.2d 233, 155 A.L.R. 375, cited by the railroad company, the use of the phrase " * * * all the right, title and interest * * * ", which was not used in the instant case, would seem to have removed all doubt as to the quantum of estate taken.

■ For real estate title purposes, an easement for right of way is an interest in land. Kelly v. Mosby, 34 Okl. 218, 124 p. 984; 25 Am.Jur.2d Easements and Licenses, Sec. 2. Such being the case, the terms "taken", "appropriated" and "appropriation" may be applied either to an easement or an estate in fee simple. The same is true of references to width and area ("two hundred feet wide" and "Eight and Eight Hundredths acres").

■ We hold that the 1901 condemnation proceedings do not clearly show an intention to take a fee simple title. Therefore, under the quoted rule from Missouri, K. and T. Ry. Co. v. Miley, supra, the railroad company acquired only an easement in a strip of land 200 feet wide.

■ In one of its propositions the railroad company argues that since it paid its ad valorem taxes for the years 1938 through 1941 the Resale Tax Deed upon which plaintiffs' title depends is void as to the railroad right of way. In this connection it was stipulated that pursuant to statutory provisions the assessment of ad valorem taxes against a railroad is by return being made to the Oklahoma Tax Commission (68 O.S.1961, Sec. 15.26) and that this was done by the defendant railroad company showing inclusion of a 200 foot strip, and a statement of the taxes for the years 1938 through 1941 was forwarded to the county assessor and the taxes were paid. The procedure for the assessment and collection of such tax is found in 68 O.S.1961, Secs. 15.24, 15.25, 15.26, 15.35, 15.36, 15.37, providing for transmittal to the State Board of Equalization and certification of valuation to the County Assessor. Since defendant railroad company listed its right of way for ad valorem taxes and paid taxes thereon in the manner provided by the statute, we are of the view that the resale tax deed was ineffective to destroy or impair railroad company's 200 foot right of way easement. Gulf Refining Co. v. Jenkins, 194 Okl. 331, 151 P.2d 419; Pure Oil Pipe Line Co. v. Cornish, 163 Okl. 79, 20 P.2d 1041.

Under the pleadings and the stipulated evidence in this case, the railroad company owns an easement only in a strip of land 200 feet wide through the quarter section, particularly described in the pleadings. Subject only to this easement, plaintiffs own the fee simple title to the entire quarter section, specifically including the mineral estate underlying the 200 foot wide strip, and were entitled to have their title thereto quieted as against the railroad company. Insofar as the trial court's judgment limited the width of the easement to 100 feet, the same must be modified to extend the width to 200 feet.

As so modified, the judgment of the trial court is affirmed.

BLACKBIRD, IRWIN, HODGES and LAVENDER, JJ., concur.

HALLEY, C. J., and DAVISON, WILLIAMS and BERRY, JJ., dissent.

DAVISON, Justice (dissenting in part).

I do not agree with that portion of the majority decision in which it is determined that the defendant railroad has only an easement in the 200 foot wide strip of land extending across the property and that, subject only to this easement, the plaintiffs own the fee title therein, specifically including the mineral estate underlying said land. It is my opinion that, under the present circumstances, the railroad owns the fee simple title to the strip of land including all the mineral estate therein.

The condemnation proceeding of the railroad's predecessor was in 1901 and was

pursuant to Art. 9, Chap. 17, Okla.Statutes of 1893, 66 O.S.1961, Sec. 1 et seq. This was prior to the limitation in Art. 2, Sec. 24, Oklahoma Constitution, providing "The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken."

In Oklahoma City-Ada-Atoka Railway Co. v. Rooker, Okl., 355 P.2d 552, we stated:

"The 1893 Statutes (Art. 9, Chap. 17, Okl.Stat.1893) conferring power of eminent domain upon a railroad to acquire property for railway purposes through condemnation proceedings authorized but did not require that title acquired by or through such proceedings be a fee simple title; and, in order for a fee simple title to be acquired under the 1893 Statutes, supra, the condemnation proceedings must clearly show an intention to acquire such a title and that such title was in fact acquired under the condemnation proceedings."

The Rooker case further held that where the proceedings under the 1893 Statutes had proceeded through the Commissioner's Report and payment of the condemnation money, and no exceptions had been filed thereto and no demand had been made for a jury trial, no further proceedings were necessary, and the report, if allowed to stand without objection, serves to pass the use or title condemned.

The majority opinion correctly recognizes that the present situation falls within the statements of law quoted from City of Seminole v. Fields, 172 Okl. 167, 43 P. 2d 64, and Shell Petroleum Corp. v. Town of Fairfax, 180 Okl. 326, 69 P.2d 649, relative to circumstances in which appropriation by an entity with power of eminent domain is "equivalent of a title by condemnation regularly acquired," even though there be some defects in the condemnation proceedings.

In prior cases this court has examined the condemnation proceedings and determined the nature of the title acquired from the terms and language used therein.

In the present case the notice to the owner of the quarter section of land notifies him that the railroad company (predecessor of defendant) desires to construct its railroad over the "estate," and " * * * that a strip of land out of said real estate bounded as follows: (describing it) * * *, a strip of land two hundred feet wide is desired, being one hundred feet wide on each side of the center line of said Railway survey, * * * containing in all Eight and Eight hundredths acres, is necessary for said railroad and will be taken and appropriated by said Railway Company therefor." and that the Commissioners will " * * * inspect said real property and consider the injury which you may sustain by reason of said railroad, and to assess the damages you will sustain by such appropriation of your land."

The Report of Commissioners recites their appointment to consider the injury the owner "may sustain by reason of the railroad * * * being located, constructed and operated and maintain over and through the said real estate and to assess the damages which said owner will sustain by reason of the appropriation of so much of said real estate as is necessary for said railroad * * *." and assessed the damages the owner "will sustain by the *appropr ropriation* of so much of said real estate * * *;" and found "the *zvuantity* of land desired by said company, and necessary and taken by said railroad, out of the real estate above described, to be ____ acres; that the boundaries of said real property so taken and necessary for said railroad are as follows: * * * a strip of land 200 feet wide * * * in all Eight & 8/100 acres; that the value of the property so taken is the sum of 27^18/100 dollars, and that the amount of injury and damages done to said real property is included in the above." and do assess to "the owner of said real estate, the said value, injury

and damages at the total sum of Twenty-seven & ¹⁰⁰⁄₁₀₀ Dollars."

This language and the terms used can only mean that the railroad desires and is taking and appropriating a described strip of land 200 feet wide, extending through the owner's property, consisting in all of 8.08 acres. It is further pointed out that the sum fixed by the Commissioners covered the items of the value of the property taken ("a strip of land 200 feet wide") and the injury and damages to the balance of the owner's property.

It is my opinion that such language clearly shows that the railroad desired, intended, and did take and appropriate a fee title to the strip of land.

In Jones v. Oklahoma City, 192 Okl. 470, 137 P.2d 233, 155 A.L.R. 375, the condemnation proceeding was pursuant to the 1893 Statutes, supra. The petition prayed for condemnation of "all the right, title and interest" of the owner. The subsequent proceedings through the report of the Commissioners used language concerning damages the owner "of said land may sustain by reason of the condemnation and appropriation of land necessary for railroad and right-of-way purposes" and to the effect that two specific parcels of land were necessary, and directed that said land be condemned, consisting of .27 of an acre and .068 of an acre, and findings that the "value of the land required for said main line to be $100.00" and resulting damage to property not taken to be $60.00, and "the value of the land required for said 'S' line to be $40.00" and damage to property not taken was $20.00. The decision held that the railroad acquired a fee simple title.

I recognize that the petition in the Jones case prayed for condemnation of "all the right, title and interest" of the owner, and the majority opinion states this "would seem to have removed all doubt as to the quantum of estate taken." However, the conclusion in the Jones case was based upon a consideration of all of the language and terms employed in the condemnation proceeding. Furthermore, it was held in

Oklahoma City-Ada-Atoka Railway Co. v. Rooker, supra, that under the 1893 Statutes, supra, it was the report, if allowed to stand without objection, that passed the use or title condemned, and that it had the force and effect of a judgment in such case under the statute. It would appear that the report would be the strongest evidence of the use or title condemned.

It is again pointed out that in both the Jones case, supra, and in the present case the proceedings state it is "land" that is being taken and appropriated by the railroad. In Missouri, K. & T. Ry. Co. v. Miley, Okl., 263 P.2d 415, 417, this court emphasized the fact that in the Jones case there was a condemnation of "the land" and therefore a condemnation of the fee simple title. The decision holds that the issue (extent of use and title) in condemnation is much the same issue presented, as to voluntary conveyances, in Aubert v. St. Louis-San Francisco Ry. Co., 207 Okl. 537, 251 P.2d 190, and quotes from 132 A.L.R. 142, 144, as follows:

"* * * If a deed to a railroad company contains nothing more than a grant of land, adequately described, the cases are practically unanimous in reaching the conclusion that it conveys a fee; but if such a deed contains nothing more than the grant of a right,—they are equally unanimous in reaching the conclusion that it creates a mere easement over the land in question."

The decision concludes "That same rule of construction is applicable to condemnation proceedings."

The case of Meriwether v. Gulf Oil Corporation, Okl., 298 P.2d 758, is not in point as to facts, but it does demonstrate the meaning attached to the use of the word "land." In that case a legislative act authorized, inter alia, the acquisition of "land" by condemnation for construction of a State lake, camp sites and lodges. Subsequent to the condemnation proceeding the controversy arose as to whether the State had acquired the minerals in a condemned tract. The decision quotes the

statutory definition of "land," 60 O.S. 1961, Sec. 6, as follows:

"Land is the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock or other substance."

and because of this and other reasons, concluded that the authorized condemnation of a specified number of acres of "land" included all minerals therein.

It is my opinion that under the above authorities the described and quoted portion of the condemnation proceedings clearly show an intention on the part of the railroad company to acquire fee simple title to the 200 foot wide strip of land, and not merely an easement, and that it did in fact acquire a fee simple title. The entry thereon in connection with the proceedings above mentioned and the construction of the railroad was effectual to vest such title, the same as by condemnation regularly acquired.

For the reasons above stated I dissent to that part of the majority opinion holding the defendant railroad has only an easement in the strip of land.